THE CITY OF TOLEDO.

SANDERSON et al. v. THE CITY OF TOLEDO.

(District Court, N. D. Ohio, W. D.   March 24, 1896.)

No. 211.

1. ADMIRALTY JURISDICTION—LAKES AND RIVERS—TRIAL BY JURY.
    In the act of 1845, purporting to extend the admiralty jurisdiction of the federal courts over the interior lakes and rivers, the provision, now embodied in Rev. St. § 566, saving to the parties a right to demand a jury trial of issues of fact in certain cases, is inoperative to do more than make the verdict advisory, and does not change the powers of the admiralty judge, who is still responsible for the decree rendered.

2. SAME.
    The statute, by its terms, does not apply to controversies arising in respect to a vessel plying between ports in the same judicial district, and not engaged in commerce and navigation between places in different states.

This was a libel in rem by Ida Sanderson and others against the steamer City of Toledo. The cause was heard on libelants' motion to submit the issues to a jury for trial.

Scribner, Waite & Wachenheimer, for libelants.
John C. Shaw and Swayne, Hays & Tyler, for respondent.

RICKS, District Judge.   This case is now before the court upon a motion of the libelant demanding the right to submit the issues

made by the pleadings to a jury for trial and verdict. They make this demand under section 566 of the Revised Statutes, which reads as follows:

"In causes of admiralty and maritime jurisdiction relating to any matter of contract or tort arising upon or concerning any vessel of twenty tons burden or upward, enrolled and licensed for the coasting trade, and at the time employed in the business of commerce and navigation between places in different states and territories upon the lakes and navigable waters connecting the lakes, the trial of issues of fact shall be by jury when either party requires it."

This motion is resisted by the respondent upon the claim that this section of the Revised Statutes is unconstitutional and void, in that it undertakes to restrict the right of the district court to try admiralty cases under the rules and practice known to the admiralty courts at the time the constitution of the United States was framed. Section 2 of article 3 of the constitution of the United States says the judicial power shall extend "to all cases of admiralty and maritime jurisdiction." Paragraph 8 of section 563 of the Revised Statutes defines the jurisdiction of the district courts of the United states as follows:

"Of all civil causes of admiralty and maritime jurisdiction; saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it; and of all seizures on land and on waters not within admiralty and maritime jurisdiction. And such jurisdiction shall be exclusive, except in the particular cases where jurisdiction of such causes and seizures is given to the circuit courts."

For some years there was a diversity of opinion between the courts of the United States as to whether the extent of the jurisdiction conferred by the constitution "to all cases of admiralty and maritime jurisdiction" was to be limited; one party contending that it was to be interpreted by what were cases of admiralty jurisdiction in England when the constitution was adopted, and the other party contending that it was to be as broad as the jurisdiction conferred upon the admiralty courts as they existed in the colonies and states prior to the adoption of the constitution. The extent and exact nature of this jurisdiction was well known to the authors of the constitution when that instrument was framed. There had been important controversies between the different states as to the extent and nature of the jurisdiction of their respective admiralty courts; and the want of an harmonious and uniform system of administering the admiralty laws was greatly felt, and one of the chief arguments in favor of the adoption of our present constitution. The inability of the confederation preceding our present Union of states to reconcile these conflicts in the jurisdictions of the several states had been made so apparent by one or two cases which attracted the attention of all the people of the different states that it was the purpose of the authors of the constitution to vest in the federal courts of the new government ample power to cure all these notorious conceded defects. The chief and most important business of the states bordering on the Atlantic Ocean, the Gulf of Mexico, and tide waters, was commerce between foreign governments and between the states. The most important questions in litigation between the citizens of the different states, and between American citizens and aliens,

grew out of business connected with this international and interstate commerce. The litigation, therefore, in the district courts of the United States, in their early history, growing out of the jurisdiction in admiralty, was the most important then known to litigants and jurists. The early decisions of these courts confined the jurisdiction of the admiralty courts to cases arising upon the ocean, or upon waters having the ebb and flow of the ocean tide. As the country grew, and the territory bordering upon the great internal lakes and navigable rivers of the United States became prosperous and populous, the necessity for extending this admiralty jurisdiction of the federal courts to these fresh-water navigable bodies became apparent.

Assuming that the earlier decisions of the federal courts upon this subject were correct, and that their jurisdiction did not extend beyond tide waters, the congress of the United States, in 1845, passed an act extending the admiralty jurisdiction over the lakes, and the rivers connecting them, and the navigable streams within the United States. Knowing the jealousy with which the people of the United States guarded their right to a trial to jury, the congress in this act, assuming that cases arising upon the lakes were cognizable only in the common-law courts, and were consequently triable by jury under the constitution, saved to the parties the right of trial by jury. It will be noticed that this was not a grant of a new right, but the saving of one already supposed to exist to litigants in such cases within that territory. But subsequent to this act the supreme court of the United States, in The Genesee Chief, 12 How. 443, decided that the admiralty jurisdiction of the courts in this country was not limited to tide water; but, on the contrary, that by force of the constitution and the act of 1789, it extended to the lakes and the navigable waters connecting the same. From this it followed that at the time of the passage of the act of 1845 the very cases provided for by it, and as to which it assumed to confer jurisdiction upon the admiralty courts as a new jurisdiction, were already cognizable in those courts, and hence that the constitutional provision guarantying the right of trial by jury in suits at common law had no application to those cases.

The supreme court of the United States, in a later case of Waring v. Clarke, 5 How. 441, decided that:

"The grant in the constitution extending the judicial powers 'to all cases of admiralty and maritime jurisdiction,' is neither to be limited to, nor to be interpreted by, what were cases of admiralty jurisdiction in England when the constitution was adopted by the states of the Union. Admiralty jurisdiction in the courts of the United States is not taken away because the courts of common law may have concurrent jurisdiction in the case with the admiralty, nor is a trial by jury any test of the admiralty jurisdiction."

In this case, which came up by appeal from the district court of the United States for the Eastern district of Louisiana, the question presented was whether that court had jurisdiction in admiralty in a case of collision which occurred on the Mississippi river, 160 miles above its mouth, within the body of a county wholly within the state of Louisiana. In the opinion of the court it is stated that two grounds were taken to maintain that position, as follows:

"(1) That the grant in the constitution of 'all cases of admiralty and maritime jurisdiction' was limited to what were cases of admiralty and maritime jurisdiction in England when our Revolutionary War began, or when the constitution was adopted, and that a collision between ships within the ebb and flow of the tide, infra corpus comitatus, was not one of them. (2) That the distinguishing limitation of admiralty jurisdiction and decisive test against it in England and in the United States, except in the cases allowed in England, was the competency of a court of common law to give a remedy in a given case in a trial by jury. And as auxiliary to this ground it was urged that the clause in the ninth section of the judiciary act of 1789, 'saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it,' took away such cases from the admiralty jurisdiction of the courts of the United States."

The opinion of the majority of the court in that case was delivered by Mr. Justice Wayne, and in his exhaustive and very learned opinion he shows that when the framers of the constitution vested in the courts of the United States jurisdiction to try all cases of admiralty they meant to vest those courts with the jurisdiction according to the practice and principles of admiralty as distinguished and known in the admiralty courts then in existence in the several states framing and adopting that instrument. In the case of Waring v. Clarke it was contended that the limit of this jurisdiction was the practice and principles as recognized and enforced by the English courts of admiralty. They contended, further, as evidence of this, that the congress of the United States, in extending the jurisdiction in admiralty over the lakes and the navigable waters connecting the same, saved to litigants the right of trial by jury,—a right which was wrested from the admiralty courts of England by the law courts in a long and bitter struggle, the story of which is familiar to every lawyer who has ever read the history of the mother country. In this case of Waring v. Clarke the chief objection urged by the three dissenting justices against the opinion of the majority of the court extending the jurisdiction of the district court of Louisiana to the case of collision on the Mississippi river, within the state of Louisiana, was that by such a holding it would extend the admiralty jurisdiction to cases of tort and contract within the body of a county of one of the states of the Union without the right to a trial to a jury. Mr. Justice Woodbury, who delivered the chief dissenting opinion in that case, argued against conferring the jurisdiction of the court in such a case, because, he said:

"If the jurisdiction was defeated, it would secure the highly-prized trial by jury, rather than by a single judge, for everything happening where a jury could be had from the vicinage of the occurrence within a county, and because it secured a decision on their rights by the highly-prized common law, inherited from their fathers, rather than by the civil law, or any other foreign code, attempted to be forced upon the commons and barons by Norman conquerors or their partisans."

So in that case, after full consideration, the majority of the court held, as before stated, that the grant of admiralty jurisdiction was not to be interpreted by what were cases of admiralty jurisdiction in England when the constitution was adopted. The character of the cases arising in the admiralty courts was such as to require speedy and prompt decisions on the part of the court, as in most cases the litigation concerned vessels or contracts arising out of navigation

where a speedy decision was necessary for the best interests of all concerned. The practice and procedure was therefore framed to secure the most expeditious and satisfactory disposition of all such controversies. Questions of fact were to be decided either by the admiralty judge, or by a commissioner appointed by him for that purpose, whose proceedings and findings were entirely within his control. To submit issues of fact to a trial to a jury under the principles and procedure of the common law would have involved great delay, expense, and embarrassment. If the finding of a jury was unsatisfactory to an admiralty judge, he might set it aside; but a new trial by another jury would be necessary, and so on until a verdict was secured which met with his approval and was consistent with his judgment. For these reasons the practice in admiralty was to dispense with juries, and the issues of fact were to be tried by the court. Such was the practice of the admiralty courts in the states and colonies preceding the formation of our constitution, so that, when the constitution vested in the courts of the United States jurisdiction of all cases of admiralty, it intended to invest those courts with the powers and practice known to the courts of admiralty at the time the constitution was framed.

The constitution, in the same section and article, extended the judicial power of the United States to all cases in law and equity. The supreme court of the United States (Robinson v. Campbell, 3 Wheat. 212) said:

"The court therefore think that, to effectuate the powers of the legislature, the remedies in the courts of the United States are to be at common law or in equity; not according to the practice of the state courts, but according to the principles of the common law and equity as distinguished and defined in that country from which we derive our knowledge of those principles."

The supreme court of the United States has repeatedly held that denying to parties litigant in the equity courts of the United States a trial to a jury on questions of fact did not thereby abridge the constitutional rights of the citizens; that those courts had the right and power to pass upon questions of fact according to the practice and principles known to courts of equity in England at the time our constitution was framed; that while, in some cases, the chancellor had a right to summon a jury, and submit questions of fact to its decision, for the purpose of informing the conscience of the court, yet the findings of the jury were merely advisory, and in no sense binding upon the chancellor. If parties in the equity courts of the United States are, therefore, not entitled to demand the trial to a jury upon questions of fact, because inconsistent with the practice of courts of equity, and because it would be an abridgment of the chancellor's powers and rights, why does not the same rule apply to a court of admiralty? True, congress has not undertaken, so far as courts of equity are concerned, to pass a statute giving to either party demanding a trial by jury the right to have such trial, as it has undertaken to do by the section now under consideration as to courts of admiralty; but it is clear that, if congress undertook to give such right of trial, and to make the finding of a jury anything more than advisory to the chancellor, it would be held unconstitutional. For the

same reason it seems to me the section now under consideration is imperative to do more than make such finding advisory. As before stated, when conferred in the act of 1845, it was inserted as a saving clause for the reasons before given. Judge Longyear, in the case of Gillet v. Pierce, 1 Brown, Adm. 553, Fed. Cas. No. 5,437, after reciting the history of the act of 1845, and showing why this saving clause was incorporated in that act, concluded that, in view of the decision of the supreme court in The Genesee Chief, congress never intended to apply this right to a trial to a jury to the admiralty courts. Considering that act, he says:

"If this were all, I should have no difficulty in holding that the clause in question was inoperative, and of no effect, and that libelant's motion to strike out and deny the respondent's request for a jury trial ought, therefore, to be granted; but, in the late revision of the United States Statutes the revisers in congress, probably looking alone to the language used by the judge in accepting the clause in question from the effect of the decision of the supreme court in the case of The Eagle, have sought to retain it as an existing effectual enactment, and as an expressed grant of cases specified in the act of 1845. * * * In the act of 1845 it was a mere saving of an erroneously supposed pre-existing right; in the revision it is the expressed grant of a right not previously existing. * * * Being there, however, under the forms of legislation it has become a law of the land, and as such it must be obeyed."

I concur with Judge Longyear in the opinion that in incorporating this section 566 in the Revised Statutes congress intended to confer upon suitors in admiralty a right to demand this trial to jury. But because, as before stated, such a right, if conferred without qualification, would be a curtailment or abridgment of the rights of the admiralty judge, I am of the opinion that the only effect the verdict of a jury after such a trial could have in an admiralty court would be as advisory to the court. This view of the effect of this act is confirmed by the opinion of Mr. Justice Bradley in the case of Lee v. Thompson, Fed. Cas. No. 8,202. In that case a person cited to appear and show his title to property which it was claimed had been transferred to one of the parties to the suit by fraudulent transfer, answered in response to the citation, and demanded a trial by jury. A jury was ordered, and the trial went on between the libelant and the person so cited, and a verdict was rendered against the latter. He thereupon excepted to the validity of this proceeding. Justice Bradley said:

"It is undoubtedly true that a court of admiralty has no power to try causes by jury; but there is no reason why it should not, either on its own motion or at the desire of the parties, submit any question of fact to commissioners or referees for their opinion or advice; and the number of these commissioners may be twelve as well as any other number. But their decision, after all, is not, like the verdict of a jury, conclusive upon the facts; and no bill of exceptions can be entertained, and no writ of error can be brought to consider such exceptions. The matter must be finally submitted to the judgment of the court, and the court will not be concluded by the verdict, although it may be aided in coming to a conclusion."

In support of this proposition Justice Bradley cites the case of Dunphy v. Kleinsmith, 11 Wall. 610. That case was properly an equitable proceeding, but the issue of fact was submitted to a jury under the supposition that the parties had a right to a jury trial. This, the court said, was wrong, in the following language:

v.73f.no.1—15

"The case, being a chancery case, and being instituted as such, should have been tried as a chancery case by the proceeding known to courts of equity. In those courts the judge or chancellor is responsible for the decree. If he refers any question of fact to a jury,—as he may do by a feigned issue,—he is still to be satisfied in his own conscience that the finding is correct; and the decree must be made as the result of his own judgment, aided, it is true, by the finding of the jury."

The supreme court, in the case of The Eagle, 8 Wall. 20, hereinbefore referred to, substantially held that this act of 1845 was obsolete. The court say:

"We must, therefore, regard it as obsolete, and of no effect, with the exception of the clause which gives to either party the right of a trial by jury when requested, which is rather a mode of exercising a jurisdiction than any substantial part of it."

From these cases I reach the conclusion that the provision of the act of 1845 giving to either party the right to a trial by jury has not changed the powers of the admiralty judge, who is still responsible for whatever judgment is rendered in the admiralty proceedings. Justice Bradley says the chancellor is responsible for the decree in a chancery case. The court may refer the questions to a jury, whose verdict will be only advisory.

The averments in the libel, and the facts set forth in the affidavit filed in support of the application for a jury trial, do not bring the libelant in this case within the meaning of the act of 1845. It appears from these averments that the City of Toledo is a vessel plying between ports within this judicial district, and not engaged in the business of commerce and navigation between places in different states. The application for a trial to a jury is therefore denied.