MILLER *v.* MILLER.

1. EVIDENCE—JUDICIAL NOTICE—RISE IN COST OF LIVING.

The Supreme Court takes judicial notice of the rise in the cost of living.

2. HUSBAND AND WIFE—SEPARATE MAINTENANCE—REFUSAL OF CO-HABITATION.

In wife's suit for separate maintenance where it appears defendant had not spoken to her for two weeks and relations were very strained prior to time of her refusal to cohabit with him, refusal was justifiable (3 Comp. Laws 1929, § 12794).

3. SAME—SEPARATE MAINTENANCE—EXTREME CRUELTY.

Since there is no statutory definition of extreme cruelty, each case of separate maintenance based thereon must be decided on its own merits.

4. SAME—SEPARATE MAINTENANCE—CLEAN HANDS.

The plaintiff in a suit for separate maintenance must come into court with clean hands.

5. SAME—SEPARATE MAINTENANCE—EXTREME CRUELTY—EVIDENCE.

Decree for plaintiff wife was justified in her suit for separate maintenance where it appears that defendant's conduct was tyrannical, arbitrary, unreasonable, and cruel, he came home intoxicated a number of times and his conduct was not at all justified by any conduct of plaintiff (3 Comp. Laws 1929, § 12794).

6. SAME—SEPARATE MAINTENANCE—EXTREME CRUELTY.

While incompatibility, quarrels and display of temper are not grounds for decree of separate maintenance, nevertheless a course of abusive and humiliating treatment of one spouse by the other, repeatedly persisted in, justifies a decree of separate maintenance on the ground of extreme and repeated cruelty (3 Comp. Laws 1929, § 12794).

7. SAME — SEPARATE MAINTENANCE — NONSUPPORT — EXTREME CRUELTY.

Although a court of equity will not, as a rule, undertake to settle disputes as to the exact amount a husband should pay his wife for the support of herself and the maintenance of the home, when there is a great discrepancy between the husband's very large income and the very small and insufficient amount

he is willing to pay her for her maintenance and support, a court may be justified in finding that the acts of the husband constitute nonsupport and extreme cruelty (3 Comp. Laws 1929, § 12794).

Appeal from Wayne; Jayne (Ira W.), J. Submitted October 16, 1947. (Docket No. 78, Calendar No. 43,873.) Decided January 5, 1948.

Bill by Elsie Rose Miller against Joseph Paul Miller for separate maintenance. Decree for plaintiff. Defendant appeals. Affirmed.

*Floyd T. Schermerhorn,* for plaintiff.

*Tilden M. Gallagher,* for defendant.

. BUTZEL, J. Elsie Rose Miller, plaintiff and appellee, seeks separate maintenance from her husband, Joseph Paul Miller, under the statute (3 Comp. Laws 1929, § 12794 [Stat. Ann. § 25.211]). The court below found that the material facts charged in the plaintiff's bill of complaint were true, and that the defendant had been guilty of extreme and repeated cruelty to plaintiff as therein charged. The court decreed a legal separation of the parties which decree requires the defendant to pay the plaintiff $300 a month for her support and maintenance, she to pay all of the expenses of maintaining the family home, except taxes, heating and lawn maintenance.

The defendant's principal contention on this appeal is that the plaintiff's bill of complaint should have been dismissed on the ground that her proofs were insufficient to prove defendant guilty of extreme cruelty.

The parties were married 30 years ago on June 27, 1917. At the time of the hearing, plaintiff was 52 years old and defendant 54 years old. They have

three adult children, one son and two daughters, all of whom, except the youngest daughter, are married and live away from the parental home.

At the time of the marriage, defendant was employed as a laborer for $22.50 per week. Through his industry and ability he has risen to the point where today he is the president and owner of 40 per cent. of the stock of the same company by which he was employed when he was married. During the first 20 years of their married life, the parties lived in modest homes commensurate with their circumstances, and in 1937 they purchased a fine home in Grosse Pointe, Michigan. In 1945 defendant's net income after taxes was $21,730.61 and in 1946 it was $21,808.83. Prosperity, which should have brought material comforts and accompanying happiness into the home, brought frequent domestic quarrels. Defendant became an unreasonable and captious autocrat in his home. He established rules of conduct in the home which are possibly justifiable where precision and absolute neatness are required but wholly unwarranted and unnecessary in a home where some degree of comfort should prevail. The family could only enter the house through the rear door, except when company was present. Defendant alone could smoke in the house. Plaintiff was ordered to be at the rear door in the evening so as to open it immediately for defendant when he came home. He arrived at irregular hours, and if she perchance failed to be at the door, she was most severely upbraided. She was in constant dread of incurring his displeasure and the resulting abuse.

Possibly the main difficulty arose from defendant's excessive drinking. The testimony of plaintiff, corroborated as to one occasion by that of one of the daughters, who, unfortunately, was called upon to testify, showed that defendant very frequently

came home intoxicated. Defendant did not specifically deny that he used liquor to excess. He denied that in 1942 he was almost constantly intoxicated when he arrived home, and when asked whether or not he became drunk two, three or four times a week, he evaded the question by replying that he never drank heartily in his home where liquor was used to a very limited extent.

In April of 1945 a serious quarrel occurred. Arrangements had been made for the plaintiff and one of her daughters to visit California in order to attend the expected confinement of the daughter-in-law. Just before plaintiff's departure, in the course of a quarrel, defendant forbade plaintiff from ever speaking to him again. When plaintiff returned home in July, 1945, the injunction was observed. Conditions in the home became impossible. The parties did not speak to one another, defendant ceased to take meals in the home, and moved to another bedroom. Defendant reduced plaintiff's allowance for the maintenance of the home and herself from $55 a week to $45 a week, and later to $30 a week. From this she was expected to pay for food, clothing, utility bills, et cetera. This sum was totally inadequate when one considers the scale of living the parties had become accustomed to and defendant's wealth and very large income. We take judicial notice of the rise in the cost of living.

Defendant charges plaintiff with having been unwilling to cohabit with him on one particular occasion and with having avoided him on Sunday nights on the pretext that she had to prepare the washing for the laundry work on Monday. It appears from the record that defendant had not spoken to plaintiff for two weeks prior to the time of the alleged refusal and that their relations with each other were strained almost to the breaking point. Under such circumstances, the refusal was justifiable.

Defendant also claims that plaintiff charged him with immoral relations with other women, but it appears that this charge of infidelity was not made outside the home and was in no way pressed, being only the result of their mutual wrangling.

There is no statutory definition of cruelty. Each case must be decided on its own merits: It is true that plaintiff must come into court with clean hands. We believe she has done this and that she has used much forbearance in standing for the tyrannical and cruel treatment of defendant. Defendant admits that plaintiff is a good housekeeper and conservative in her habits. The evidence showed that plaintiff worked hard, did the cooking, cleaning, sewing, laundry, et cetera, and even on occasion shined defendant's shoes. The record does not show that over the period of years plaintiff's conduct has been such as to in any way justify defendant's treatment of her, nor to deprive her of the equitable relief she seeks.

The unpleasantness did not arise because of mutual wrangling over money matters as in *Beller* v. *Beller,* 50 Mich. 49, on which defendant relies. We have repeatedly held that incompatibility of temper is an insufficient cause of divorce. *Morrison* v. *Morrison,* 64 Mich. 53. There was more than that in the instant case.

The misconduct which will form a good ground for a legal separation must be very serious, and such as amounts to extreme cruelty, entirely subverting the family relations by rendering the association intolerable. *Kolberg* v. *Kolberg,* 312 Mich. 42. Mere unpleasantness in the home life does not establish a case of extreme cruelty. *Gindorff* v. *Gindorff,* 295 Mich. 469. However, in the instant case conditions in the home life had become intolerable. Defendant at times regarded plaintiff as a menial in the home and she was in fear of his rage, which was immedi-

ately aroused if she did not submit to his arbitrary and unreasonable orders.

Defendant relies on *Brookhouse* v. *Brookhouse,* 286 Mich. 151, but in that case we held (quoting from the syllabus):

"While incompatibility, quarrels and display of temper are not grounds for divorce, nevertheless a course of abusive and humiliating treatment of one spouse by another, repeatedly persisted in,   *   *   * justifies a divorce on the ground of extreme and repeated cruelty."

In *Trombley* v. *Trombley,* 313 Mich. 80, we held that where the wife was not without fault, but the evidence showed the husband was by far the greater offender, that his conduct caused most of the mental discord and provoked the wife's alleged misconduct, and she herself was not guilty of the more serious charges of misconduct made against him, she was entitled to a decree on her cross bill.

The relief asked for and awarded by the court in the instant suit was separate maintenance and support. Defendant has an income of over $21,000 a year. Latterly he had been giving his wife, $2,860 per year. When he reduced this amount to $1,650 per year, he left her but little recourse except to apply for separate maintenance and a divorce from bed and board. The statute (3 Comp. Laws 1929, § 12729 [Stat. Ann. § 25.87]) provides that a divorce from bed and board may be decreed "for the cause of extreme cruelty   *   *   *   and   *   *   *   on the complaint of the wife, when the husband, being of sufficient ability to provide a suitable maintenance for her, shall grossly or wantonly and cruelly refuse or neglect to do so."

A court of equity as a rule will not undertake to settle disputes as to the exact amount a husband

should pay his wife for the support of herself and the maintenance of the home, but when, as in this case, there is a great discrepancy between the husband's very large income and the very small and insufficient amount he is willing to pay her for her maintenance and support, the court is justified in finding that the acts of the husband constitute nonsupport and extreme cruelty. The court reserved the determination of permanent alimony until the outcome of this appeal which defendant stated he would take. The court also stated that he would reduce the amount of the alimony if defendant moved out of the home.

The decree is affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, REID, NORTH, DETHMERS, and CARR, JJ., concurred with BUTZEL, J.. BOYLES, J., concurred in the result.