Louis A. NICE, Claimant,

v.

CHESAPEAKE AND OHIO RAILWAY COMPANY, a Virginia corporation, Defendant.

Civ. A. No. 5475.

United States District Court
W. D. Michigan, S. D.

Sept. 26, 1969.

Marcus, McCroskey, Libner, Reamon, Williams & Dilley, Muskegon, Mich., Robert J. VanLeuven, Muskegon, Mich., of counsel, for claimant.

Paul O. Strawhecker, Grand Rapids, Mich., for defendant.

### OPINION

FOX, District Judge.

This opinion will deal in depth with two aspects of this somewhat complicated seaman's injury action. First, defendant's motion for a new trial following an unfavorable jury verdict will be examined. The second part of the opinion addresses plaintiff's position that a jury impaneled under 28 U.S.C.A. § 1873 is advisory only.

*Defendant's motion for a new trial.*

After trial of this seaman's injury action to a jury, pursuant to Title 28 U.S.C.A. § 1873, the jury found against the defendant on a number of issues. The verdict was in the nature of a special verdict supported by specific interrogatories which confirmed the factual findings which were made.

The special interrogatories and answers are set forth herein and made a part hereof:

"The members of the jury must unanimously agree on the answers to the following questions:

1. On what date did or will the plaintiff reach a state of maximum cure?

March 29, 1967

2. Did the defendant wrongfully fail to pay maintenance and cure to plaintiff?

Yes

Yes or No

3. (Answer only if the answer to question number 2 is 'yes.') If the defendant wrongfully failed to pay maintenance and cure to plaintiff, what damages for counsel fees, interest, and other damages, if any, are due to plaintiff?

$23,000

State the amount

4. Did the accident happen in a manner similar to the way plaintiff described it?

Yes

Yes or No

The remaining questions (5–7) should be answered only if the answer to number 4 is 'yes.'

5. Was the ship on which plaintiff claims to have sustained his injury unseaworthy in a way which proximately caused his injury?

Yes

Yes or No

6. Was defendant negligent in whole or in part in a way which was a proximate cause of the plaintiff's claimed injury?

Yes

Yes or No

7. (This question should be answered only if the answer to either number 5, or number 6, or both, is 'yes.') If the answer to either number 5 or number 6, or both, is 'yes,' what are the plaintiff's damages?

$150,000

State the amount"

Defendant moves for a new trial upon a multitude of grounds. A brief review of the facts and defendant's position at trial will facilitate an understanding of the defendant's supporting arguments and the court's rulings.

On April 3, 1966, plaintiff, an oiler on defendant's ship, slipped and fell on an oily, slippery catwalk while performing his duties. As a result of this fall, plaintiff allegedly aggravated a pre-existing back injury and became disabled. Although wages, maintenance and cure were due plaintiff until at least March 29, 1967, as calculated by the defendant, plaintiff was paid only $500

nearly five months or more after he sustained the injury. No other sum was paid before or after that date, September 28, 1966. He remains in pain and unable to work.

Plaintiff sued defendant for wages, maintenance and cure, and for damages due to unseaworthiness and negligence. Defendant's basic defense was the claim that the accident did not happen. On this issue, the jury found against the defendant. Defendant claims in the alternative that, if the jury should find the accident did happen, it had the defense that the ship was seaworthy and that the defendant was not negligent. On each of these fact issues the jury found against the defendant.

Defendant failed also to meet its burden of proof on contributory negligence. This failure was clear and obvious. The only evidence as to what actually happened was the testimony of the plaintiff. That testimony was to the effect that he was where he was supposed to be, doing what he was required to do as an oiler. There was no countervailing testimony, nor was there a basis for inference from the plaintiff's testimony that he was in any way negligent as to contribute to the resulting accident and its consequences. On this evidence reasonable men would not differ.

The above provides a rough framework for the defendant's present motion for a new trial. In evaluating defendant's assertions supporting this motion, certain clearly enunciated rules of law of the Supreme Court of the United States should be kept in mind. Focus here will be on wages, maintenance and cure, unseaworthiness, and Jones Act liability. These will be quoted at length to demonstrate the unquestioned clarity of most of the law which defendant seeks to challenge in its sixty-odd objections.

A. *Admiralty actions are essentially equitable in nature.*

In Seas Shipping Co. v. Sieracki, infra, footnote 5, page 89 of 328 U.S., page 875 of 66 S.Ct. page 1103 of 90 L.Ed., it is stated:

" 'When a cause of action in admiralty is asserted in a court of law its substance is unchanged.' Panama Agencies Co. v. Franco (CCA 5th) 111 F.2d 263, 266."

Equity and justice are thus the foundation and substance of admiralty law. Admiralty courts, and law courts sitting in admiralty, follow principles of equity and natural justice and are not bound by common law rules. The J. Oswald Boyd, 53 F.Supp. 103 (E.D.Mich.1943); The Dixie, 1940 A.M. C. 28 (E.D.Pa.). See 2 Benedict, Admiralty, Section 223, Page 30, Note 8.

B. *Wages, maintenance and cure.*

With respect to wages, maintenance and cure:

"Among the most persuasive incidents of the responsibility anciently imposed upon a shipowner for the health and security of sailors was liability for the maintenance and cure of seamen becoming ill or injured during the period of their service. * * * Whether by traditional standards he is or is not responsible for the injury or sickness, he is liable for the expense of curing it as an incident of marine employer-employee relationship. So broad is the shipowner's obligation that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility. * * * Conceptions of contributory negligence, the fellow-servant doctrine, and assumption of risk have no place in the liability or defense against it. Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection." Aguilar v. Standard Oil Co. of New Jersey, 318 U.S. 724, at 730–731, 63 S.Ct. 930, at 933, 87 L.Ed. 1107 (1924). (Citations and footnotes omitted.)

C. *Warranty of Seaworthiness doctrine.*

In Seas Shipping Co. v. Sieracki, infra, the Supreme Court, in rejecting limitations of contract and common law tort

upon the warranty of seaworthiness doctrine, said at page 93 of 328 U.S., page 877 of 66 S.Ct.:

"That the liability may not be either so founded or so limited would seem indicated by the stress the cases uniformly place upon its relation, both in character and in scope, to the hazards of marine service which unseaworthiness places on the men who perform it. These, together with their helplessness to ward off such perils and the harshness of forcing them to shoulder alone the resulting personal disability and loss, have been thought to justify and to require putting their burden, in so far as it is measurable in money, upon the owner regardless of his fault. Those risks are avoidable by the owner to the extent that they may result from negligence. And beyond this he is in the position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its cost."

Mr. Justice Potter Stewart in Mitchell v. Trawler Racer, infra, made the following cogent and conclusive observation:

"In Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, the Court effectively scotched any doubts that might have lingered after Mahnich as to the nature of the shipowner's duty to provide a seaworthy vessel. The character of the duty, said the Court, is 'absolute.' 'It is essentially a species of liability without fault, analogous to other well known instances in our law. Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character. * * * It is a form of absolute duty owing to all within the range of its humanitarian policy.' * * *

"From that day to this, the decisions of this Court have undeviatingly reflected an understanding that the owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care. * *

"But, in view of the decisions in this Court over the last 15 years, we can find no room for argument as to what the law is. What has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence. To hold otherwise now would be to erase more than just a page of history.

"What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service. * * *." Mitchell v. Trawler Racer, supra, 362 U.S. 539, 549–550, 80 S.Ct. 926, 932, 4 L.Ed.2d 941 (1960).

█ It is also clear that a shipowner's actual or constructive knowledge need not be proved. Again, quoting from Mitchell, supra, at page 549 of 362 U.S., at page 932 of 80 S.Ct.:

"Of particular relevance here is Alaska S.S. Co. v. Petterson, [347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798,] supra. * * * That decision is thus specific authority for the proposition that the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability. * * *"

█ Finally, it is equally clear that contributory negligence has never been a defense in suits brought by seamen to recover for injuries due to a ship's unseaworthiness, but has been applied merely in mitigation of damages. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 429, 59 S.Ct. 262, 83 L.Ed. 265 (1939).

## D. *Jones Act liability and the Federal Employers Liability Act.*

■■ Plaintiff also alleged a cause of action under the Jones Act, which applied the standards of the Federal Employers' Liability Act to the maritime industry. With respect to the latter statute, our highest court has said:

"The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit." [1]

To continue the quote:

"The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.

"The Congress when adopting the law was particularly concerned that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence. Originally, judicial administration of the 1908 Act substantially limited the cases in which employees were allowed a jury determination. That was because the courts developed concepts of assumption of risk and of the coverage of the law, which defeated employee claims as a matter of law. Congress corrected this by the 1939 amendments and removed the fetters which hobbled the full play of the basic congressional intention to leave to the fact-finding function of the jury the decision of the primary question raised in these cases—whether employer fault played any part in the employee's mishap.

" * * * The fact that Congress has not seen fit to substitute that scheme"—referring to the workmen's compensation system used in the states—"cannot relieve this court of its obligation to effectuate the present congressional intention by granting certiorari to correct instances of improper administration of the Act and to prevent its erosion by narrow and niggardly construction. * * *

"The kind of misconception evidenced in the opinion below, which fails to take into account the special features of this statutory negligence action that makes it significantly different from the ordinary common-law negligence action, has required this Court to review a number of cases. In a relatively large percentage of the cases reviewed, the Court has found that lower courts have not given proper scope to this integral part of the congressional scheme. We reach the same conclusion in this case. The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." Rogers v. Missouri P. R. Co., 352 U.S. 500, 507–510, 77 S.Ct. 443, 449–451, 1 L.Ed.2d 493 (1957).

The Federal Employers' Liability Act standards were incorporated into the Jones Act by the statute itself:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, main-

---

1. Therefore, it is improper to assert in a suit of this kind the claim of sole negligence on the part of the employer. Likewise, contributory negligence is relevant only as to mitigation of damages and not at all to be considered on liability itself.

tain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right of remedy in cases of personal injury to railway employees shall apply; * * *." 46 U.S.C. § 688.

This court proceeded to apply the statute so as to follow the clear policy of this essentially humanitarian legislation.

### E. *Defendant's Objections:*

#### 1. *Wages, Maintenance and Cure.*

Defendant's assertions 1(d) and 1(e) relate to the jury's finding that the defendant wrongfully withheld wages and maintenance and cure from plaintiff and its assessment of damages at $23,000.

■ Defendant first argues that there was no evidence of arbitrary or wrongful conduct on its part. This was a factual question for the jury. There was sufficient evidence for the jury to conclude that the defendant knew of plaintiff's disability, recognized its obligation to pay wages and maintenance and cure, and yet paid only approximately 25% of the amount due.

This evidence includes a statement of plaintiff to defendant concerning his financial hardship (defendant's exhibit 24 discussed below). It is difficult for the court to understand why wages and maintenance and cure were not paid, even though the defendant admitted, in its amended request to charge number 1, liability for at least $2,718. The jury's determination of wrongful withholding is thus supported by the facts.

Defendant also asserts that the amount of the award for withholding wages, maintenance and cure, is punitive, excessive and penal. This is not so.

■ The railroad had notice the day of the accident that Mr. Nice was injured. Mr. Nice also received a pass from the defendant to enter the marine hospital. Plaintiff also gave defendant notice of the claim for wages and maintenance and cure. However, defendant steadfastly refused to give Mr. Nice more than $500, and this after more than five months, which was substantially less than his pressing necessities at the end of September. See defendant's exhibit 24.

■ Wages and maintenance and cure are an incident of the status of a seaman in the employment of his ship. O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 42, 63 S.Ct. 488, 87 L.Ed. 596 (1942); Cortes v. Baltimore Insular Line, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932). This duty owed a seaman is in no sense predicated on unseaworthiness or negligence attributable to the shipowner. Aguilar v. Standard Oil Co. of New Jersey, 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943); Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 527, 58 S.Ct. 651, 82 L.Ed. 993 (1938).

■ As the Second Circuit in Bartholomew v. Universe Tankships, Inc., 279 F.2d 911, 914 (2nd Cir., 1960), stated through Judge Medina:

" '[T]he vitality of a seaman's right to maintenance and cure has not been diminished through the years.' Mitchell v. Trawler Racer, Inc., supra, 80 S.Ct. at page 929. It has become established that the obligation of the shipowner attaches as a result of the relationship of employment without any regard for the form of the contract or the will of the contracting parties. Cortes v. Baltimore Insular Line, 287 U.S. 367, 372, 53 S.Ct. 173, 77 L.Ed. 368 (1932). The rights of the seaman are neither conditioned on fault on the part of the shipowner nor on the absence of fault on his part. Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949). Nor must the injury or illness be in any way causally connected with shipboard duties. Farrell v. United States, supra. The obligation to provide maintenance and cure has been expanded so far that two of the foremost admiralty scholars have concluded that 'With the exception of border-

line cases on misconduct * * * [t]he remedy has become absolute.' Gilmore and Black, The Law of Admiralty (1957) 261."

There is an affirmative duty on a shipowner to investigate a claim for maintenance with "reasonable diligence." Stewart v. S.S. Richmond, 214 F.Supp. 135, 136 (E.D.La.1963). Furthermore, "when there is substantial evidence that a shipowner is dilatory in making such an investigation or if it fails to make an investigation which would have disclosed the merit of the seaman's claim, the seaman may recover the damages resulting from the failure to pay maintenance, as well as attorney fees incurred in getting the maintenance from the shipowner." Id. at 137.

When a shipowner already has knowledge, the failure to pay is even more grievous.

Defendant's counsel, Mr. Strawhecker, clearly recognized that a seaman is entitled to maintenance and cure as a matter of right when he becomes sick or is injured during the course of a voyage:

"MR. STRAWHECKER: * * * The whole point is, under the doctrine of maintenance and cure, which is an ancient rule of sea, a seaman ill aboard ship is entitled to this." (Excerpt from the proceedings March 24–28, 1969, at page 36.)

A statement of Mr. Nice introduced in evidence by the defendant, defendant's exhibit 24, and read by each juror at defendant's request, indicates what plaintiff's damages were, in part:

"My wife, Meda, is working in the Manistee Garment Company as a presser. She left me on Aug. 15, 1966 as we quarreled over lack of money. Bills of all kinds have piled up on me and I need help in paying them. My wife used to handle the processing of paying these bills. The Rev. Gudmund Petersen calls on me every other day to keep me from utter despair. My total bill overdue amounts to over $500. Mortgage payments of $54.17 are due on the house for May, June, July, August and September. They have threatened to foreclose. On top of that, mortgage insurance, life insurance, and other bills are being sent here which I do not have the money to pay and which are driving me crazy, as my wife and I stand to lose everything."

Defendant simply paid what was due approximately to date and continued to refuse to pay anything in the future. The defendant knew not only of plaintiff's disability, which would have entitled him to wages, maintenance and cure and, as a matter of law, but also knew of his acute financial distress and the impact which this distress alone exerted. The jury could very well have concluded that such withholding was cold, calculated, arbitrary and capricious.

From these and other facts, the jury could also have reasonably concluded that the defendant may have been exerting economic pressure in order to effect a settlement of the entire litigation for a nominal amount.

Out of the presence of the jury, court document number one was presented to the court. This illustrates a similar pattern of withholding wages, maintenance and cure from this same man on another occasion. It illustrated to the court that the jury may have been correct in reaching a judgment that the employer was exerting economic duress in face of the seaman's economic necessity to force a settlement for less than was due under the facts.

Settlements are to be encouraged. But to withhold sums unquestionably due to a seaman, especially when he is in dire need, as a tool to force a settlement is an abuse of corporate power conferred as a grant from a considerate government. Since plaintiff was clearly entitled to wages, maintenance and cure as a matter of humanitarian law, the jury properly refused to condone defendant's pernicious pressure tactics. The principle behind these payments is to alleviate the hardship, to both the seaman and his family,

resulting from illness or injury. Although court document number one was not before the jury, the evidence they did have constituted sufficient grounds for a finding that defendant pursued the same practice in this case.

In summary, regardless of fault, if a seaman is injured or disabled during the course of the voyage, he is entitled to wages, maintenance and cure until the end of the voyage. And even presupposing, for the sake of assuming the defendant's position, that the questions of seaworthiness and negligence under the doctrine of warranty of unseaworthiness and the Jones Act, via Federal Employers' Liability Act, were in issue, the obligation of paying wages, maintenance and cure was at this point undisputable. The defendant knew that the employee, the seaman, went to the doctor, went to the marine hospital and was unable to return to work. Thus, even if the defendant's theory—that the accident never happened and that the disability was only one which occurred while he was aboard ship in the course of his employment as a seaman—is accepted, the duty to pay wages, maintenance and cure was at this point permanently fixed as a matter of right.

Furthermore, the $23,000 awarded was not excessive. There was evidence from which the jury could have concluded that as a result of the wrongful withholding, plaintiff's wife left him, he lost his home, his bills piled up, and he was left in utter despair. Surely these elements, together with counsel fees and interest, probably, in fairness, amount to $23,000. As such, the verdict was remedial and compensatory and not punitive.

## 2. Election of remedies.

Another claim of error is that the court should not have allowed a claim of unseaworthiness to be combined with a claim for negligence, and that plaintiff should have been required to elect between these remedies.

This proposition was rejected by the United States Supreme Court six years ago in Fitzgerald v. U. S. Lines, 374 U.S. 16, 18–20, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). In that case the complainant demanded a jury for all the issues growing out of the single action. The trial judge granted a jury trial for the Jones Act and unseaworthiness issues, but held the question of recovery under wages, maintenance and cure in abeyance to be tried to the court, after jury trial of the other issues.

In that case, the Supreme Court, with Justice Black declaring the view of eight members, held that while actions for unseaworthiness and for maintenance and cure did not ordinarily require a trial by a jury, the negligence aspect of the seaman's claim involved a remedy under the Jones Act which gave the seaman the right to a jury trial of that aspect of the case.

The Fitzgerald case differs from the instant case in that there the seaman demanded a jury under the Jones Act. In the instant case, the defendant demanded a jury under the provisions of the Great Lakes Act, which provides for a jury, over the strenuous objection of the plaintiff.

The Fitzgerald court said at page 18 of 374 U.S., at page 1649 of 83 S.Ct.:

"Although remedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of slightly different principles and procedures, they nevertheless, when based on one unitary set of circumstances, serve the same purpose of indemnifying the seaman for damages caused by injury, depend in large part upon the same evidence, and involve some identical elements of recovery. * * * In the absence of some statutory or constitutional obstacle, an end should be put to such an unfortunate, outdated, and wasteful manner of trying these cases. Fortunately, there is no such obstacle."

That the Supreme Court clearly intended to change the proposition asserted by the defendant is evidenced by the following language:

" * * * Where, as here, a particular mode of trial being used by many judges is so cumbersome, confusing, and time consuming that it places completely unnecessary obstacles in the paths of litigants seeking justice in our courts, we should not and do not hesitate to take action to correct the situation. Only one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually in separate parts because of historical developments. And since Congress in the Jones Act has declared that the negligence part of the claim shall be tried by a jury, we would not be free, even if we wished, to require submission of all the claims to the judge alone. * * * Accordingly, we hold that a maintenance and cure claim joined with the Jones Act claim must be submitted to the jury when both arise out of one set of facts." Id. at 21, 83 S.Ct., at 1650.

Considering the facts in the Fitzgerald case, namely, that the seaman's claim asserted wages, maintenance and cure, warranty of seaworthiness and Jones Act negligence in one complaint, the judge submitting the unseaworthiness doctrine and the Jones Act to the jury and withholding the issue of wages, maintenance and cure, and considering also the judgment of that court, the only reasonable conclusion is that there is no election, that all issues arise as a unitary action under a single set of circumstances and a single cause of action with separate conceptual parts.

In the face of this clear language, the defendant's insistence on plaintiff's election between the Jones Act and the doctrine of unseaworthiness is untenable. That the court intended to change the principle asserted by the defendant is underscored by Justice Harlan's dissent in Fitzgerald, in which he stated at page 22 of 374 U.S., at page 1651 of 83 S.Ct.:

"I am wholly in sympathy with the result reached by the Court. It is, I believe, a result that is consistent with sound judicial administration and that will greatly simplify the conduct of suits in which a claim for maintenance and cure is joined with the Jones Act claim arising out of the same set of facts.

"But the rule that the Court announces is in my view entirely procedural in character, and the manner in which such rules must be promulgated has been specified by Congress in 28 U.S.C. § 2073. This statute provides that rules of procedure in admiralty 'shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof * * * and until the expiration of ninety days after they have been thus reported.'

" * * * I think the appropriate way to achieve what in this instance is obviously a desirable procedural reform is to deal with the matter through the Judicial Conference of the United States."

The intent of the Supreme Court expressed in Fitzgerald is underscored by the 1966 amendment to the Federal Rules of Civil Procedure. The joining of claims and remedies is approved and encouraged by Rule 18(a) of the Federal Rules of Civil Procedure:

"A party asserting a claim to relief * * * may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as he has against an opposite party."

The notes of the Advisory Committee on Rules states: "Free joinder of claims and remedies is one of the basic purposes of unification of the admiralty and civil procedure. The amendment (of Rule 18(a)) accordingly provides for the inclusion in the rules of mari-

**1178**

time claims as well as those which are legal and equitable in character."

Finally, a number of circuit courts of appeal have expressly rejected defendant's position. McCarthy v. American Eastern Corp., 175 F.2d 724, 725 (3d Cir. 1949), cert. den. American Eastern Corp. v. McCarthy, 338 U.S. 868, 70 S.Ct. 144, 94 L.Ed. 532 (1949), rehearing den. 338 U.S. 939, 70 S.Ct. 343, 94 L.Ed. 579 (1950); Balado v. Lykes Bros. S. S. Co., 179 F.2d 943, 945 (2d Cir. 1950); Williams v. Tide Water Associated Oil Co., 227 F.2d 791, 792–793 (9th Cir. 1955); Doucette v. Vincent, 194 F.2d 834 (1st Cir. 1952); Pate v. Standard Dredging Co., 193 F.2d 498 (5th Cir. 1952); Gillespie v. United States Steel Corp., 321 F.2d 518, 528, n. 6 (6th Cir. 1963).

### 3. *Evidence of subsequent repairs.*

Also, defendant takes exception to the admission of evidence that the defendant installed handrails subsequent to the accident.

 The court recognized when this evidence was first offered that it was not admissible to show negligence under the Jones Act. It is admissible, however, on the issue of unseaworthiness to show the feasibility and availability of safety devices, "and appurtenances reasonably fit for intended use." Mitchell v. Trawler, supra. As long ago as 1895 the Sixth Circuit recognized this exception to the inadmissibility of subsequent repairs when Circuit Judge Taft stated that "evidence * * * held to be incompetent for the purpose of showing an admission of negligence might * * * be admissable for some other purpose. * * *" Cincinnati, H. & D. R. Co. v. VanHorne, 6 Cir., 69 F. 139, 140, 141 (1895). See also, Johnson v. United States, 270 F.2d 488, 491–492 (9th Cir. 1959), where the court said:

"* * * The lower Court correctly held that the evidence of the changes at the top of the gates in question, made after the accident, was properly admitted, *not* as evidence of negligence

on the part of the defendant, but *solely* for the purpose of showing the practicability of this additional safeguard. We see no error in this procedure."

 The above is simply an acknowledged exception to the rule, and permits admission of evidence of subsequent repairs for the limited purpose discussed. See Boeing Airplane Co. v. Brown, 291 F.2d 310 (9th Cir. 1961); Annot., 64 A.L.R.2d 1296, 1314 (1959). Therefore, considering the nature of recovery for unseaworthiness, which is a humanitarian doctrine imposing liability separate and apart from negligence and based instead upon a warranty to the seaman of a seaworthy ship reasonably fit for the intended use (Mitchell v. Trawler Racer, supra, 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960)), evidence of available and feasible safety devices is admissible.

 Such evidence is also admissible for the purpose of considering the reasonableness or unreasonableness of the appurtenances, appliances, and the place or locale of work under the seaworthy doctrine. Negligence and concepts and rules of evidence geared to negligence are immaterial to consideration of unseaworthiness.

 Defendant in his misconception of the docrine of unseaworthiness ignored the absolute nature of the shipowner's liability: "It is essentially a species of liability without fault, analogous to other well known instances in our law. Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character." Seas Shipping Co. v. Sieracki, supra, 328 U.S., at 94, 66 S.Ct., at 877, as well as Mitchell v. Trawler Racer, supra.

 Admissibility of evidence relevant to unseaworthiness is also not limited by exclusionary rules applicable to negligence actions. Since all of the cases cited by the defendant in its memo in support of its objection relate to negligence doctrine, they are immaterial and

irrelevant to the absolute obligation of the shipowner under the seaworthy warranty doctrine.

 However, as noted above, subsequent repairs would be inadmissible to show negligence under plaintiff's Jones Act claim. When faced with evidence which is inadmissible for one purpose but admissible for another, the evidence can ordinarily be admitted if the jury is properly cautioned as to the limited purpose of the evidence and the limited scope within which it may be considered. McKenzie v. Vandecar, 105 Mich. 232, 62 N.W. 1031 (1895). Volume 1, J. H. Wigmore, Evidence, Section 13 (3d ed. 1940). The Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, 46 F.R.D. 161, 192 (1969), states the proper procedure:

"Rule 1–06. Limited Admissability. When evidence which is admissable as to one party and for one purpose but inadmissable as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

There was no request in this case for such a limitation. However, the court, in the presence of the jury, declared the limited use of the evidence. And the court at the time the question arose, said:

"THE COURT: I am admitting it on the question of seaworthiness on the proposition that the duty upon the shipowner is absolute to furnish a reasonably safe place for working. The reason for excluding it in ordinary negligence cases is that the subsequent precautions or repairs are not relevant to negligence as the cause of the injury. In addition, such admission would also tend to discourage owners from improving the condition which caused the injury, even if the owners had been careful originally.

"Now, the reason for the exclusion in ordinary negligence cases, is not prevalent on the issue of seaworthiness, because seaworthiness is an absolute duty imposed upon the owner. The question is whether a handrail is reasonably safe equipment under the circumstances. So I am admitting it for that reason. * * *

"But I so find the particularities of the admiralty jurisdiction, the law in this area, and the humanitarian purpose of the doctrine and the burden of the duty on the shipowner is a sufficient predicate for the admission of evidence of this kind going to the reasonableness or unreasonableness of equipment."

The above was taken from the record. A similar statement of the law was given at least twice more during the trial, in the presence of the jury, in ruling on a similar objection. In view of the above, the court feels that its admission of subsequent repairs for the purposes mentioned was accompanied by ample comment to insulate defendant from any resulting prejudice.

 Furthermore, even if the jury after admonishment by the court that it was admitted only for seaworthiness doctrine and not on the question of negligence, considered the evidence of subsequent installation in determining whether or not the defendant was negligent under the Jones Act, the consequences would not be fatally prejudicial. Recovery of the amount of damages awarded could be supported by either or both theories of unseaworthiness and/or Jones Act negligence. The jury found both. The jury could have properly considered the evidence in determining the issue of unseaworthiness and awarded the damages in the amount in which it did. Accordingly, there could be no prejudice whatsoever from this admission of evidence, and defendant's objection is therefore without merit.

Finally, defendant claimed in one of its objections that the court permitted the above objection to be argued in the presence of the jury, and this it claims is prejudicial. During the trial, defendant submitted a trial memorandum regarding submission of evidence of subsequent re-

pairs, dated March 12, 1969. The record shows that there was no argument in the presence of the jury. The court read the memorandum, was familiar with the cited cases, and ruled on the defendant's objection in view of the cases cited therein.

### 4. *Railroad Retirement Insurance Payments.*

Finally, defendant asserts the collateral source rule should not have been applied to prevent evidence of payments made to plaintiff under the Railroad Retirement Insurance Act, 45 U.S.C. § 351.

██ There are only two reasons given for allowing such evidence. One is to mitigate any damage award; the other is to show wages and maintenance and cure were not wrongfully withheld. Neither reason is valid.

The law does not permit the jury to offset damages with benefits paid under the Railroad Retirement Insurance Act. The Board, rather, is given a lien upon any damages paid or payable under 45 U.S.C. § 362(*o*). Chief Judge Sobeloff stated this proposition most simply in the United States v. Price, 288 F.2d 448, 451 (4 Cir. 1961):

> "Where railroad employees have been disabled because of negligence and have sued their employers under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., the courts have uniformly held that the retirement benefits must not be considered in calculating damages. See: McCarthy v. Palmer, 29 F.Supp. 585, D.C.E.D.N.Y. 1939, affirmed 113 F.2d 721, 2 Cir. 1940, cert. den., Palmer v. McCarthy, 311 U.S. 680, 61 S.Ct. 50, 85 L.Ed. 438; New York, New Haven & Hartford R. Co. v. Leary, 204 F.2d 461, 1 Cir. 1953; Sinovich v. Erie Railroad Company, 230 F.2d 658, 3 Cir. 1956; Hetrick v. Reading Co., 39 F.Supp. 22, D.C.D.N.J.1941."

Whether or not benefits were received under the Act is simply irrelevant as to any failure of the defendant to pay maintenance and cure. Benefits under the Railroad Act are from a collateral source and were properly excluded. In fact, it may well have been prejudicial error to allow such evidence in the record and is certainly contrary to the humanitarian spirit of the law of the case.

### 5. *Trial court's jury charge.*

Mr. Hunting, Jr., co-counsel for defendant, made twelve exceptions to the court's jury instructions. First, an exception was taken to the court's ruling that it is impermissible for the court in voir dire examination or subsequently to charge the jury that a seaman is a ward of admiralty.

██ The court will not go into this other than simply to say that this is clearly the law. The seaman is a ward of admiralty, and in this respect, of the shipowner. Simply stating a concept underlying this humanitarian doctrine is not error—it is the law.

Second, defendant objects to the failure of the court to require an election between the claims of unseaworthiness and negligence under the Jones Act. This has been covered above.

██ Third, objection is made to the exclusion of references to plaintiff's past or probable income tax. McWeeney v. N Y., N. H. & H. RR., 282 F.2d 34 (2d Cir. 1960).

Such evidence is not material. The general rule adhered to by a decided majority of American courts is that such evidence should not be introduced in personal injury cases. Annotation 64 A.L. R.2d 1393, § 4(a), 1959.

The fourth objection stated at the conclusion of the instructions is refusal to grant defendant's instruction as regards comparative or proportional fault.

 In the first place, the court clearly found as a matter of law and fact there was not contributory negligence. The doctrine of comparative negligence is relevant only to mitigation of damages. Since the court found as it did, there is no error. And there certainly would be no error by excluding the comparative,

proportionate fault in reference to liability, which was a purpose of the defendant. It has no place whatsoever, either inferentially or in any manner, on the issue of liability.

Five, exception taken to the court's refusal to grant instruction to the effect that the sole cause of the accident was the plaintiff's negligence. I have already covered that proposition. Plaintiff was not negligent.

Six, a specific objection is made to the proposition that the absolute duty to provide a seaworthy vessel is a non-delegable duty. As a matter of fact, the very first case, the Seas Shipping Company case, a case in which a longshoreman sought to obtain recovery against the shipowner, is authority for this proposition. The doctrine of non-delegability of the duty of the shipowner was discussed clearly in that case, and it is clearly non-delegable.

Seven, defendant takes exception to the part of the instruction which permits the jury to separate pain and suffering and loss of enjoyment of life.

In a recent case in the Sixth Circuit, Pierce v. New York Central RR., 409 F. 2d 1392, decided April 21, 1969, the court pointed out that in Cawood v. Earl Paige & Co., 239 Mich. 485, 214 N.W. 402, in upholding a verdict against the defendant's claim of excessiveness, the Court said that the plaintiff "will no longer be permitted to enjoy many of the things in life which it may well be said 'makes life worth living.'" Id. at 490, 214 N.W. at 404.

In Tabor v. Carey & Leach Bus Lines, 242 Mich. 9, 217 N.W. 792, in denying the claim of excessiveness, the court pointed out among other factors that the plaintiff from necessity had abandoned his musical instruments and ambitions. These are the kind of things which are meant by life's enjoyment. And we believe that the foregoing Michigan decisions indicate that loss of life's enjoyments constitute an element of compensable damages "under the law" [in the State of Michigan].

Eight, objection is made to the use of Health, Education and Welfare mortality tables. The HEW mortality tables is a document published by the United States, and the courts can take judicial notice of that document in a federal case involving admiralty, the Jones Act, and the Federal Employers' Liability Act. As a matter of fact, the new Proposed Rules of Evidence list this type of document as the kind of document of which the court can take judicial notice.

At the recently completed Sixth Circuit Conference there was an excellent panel composed of Albert Jenner, Professor Cary, and Dean Charles Joiner of Wayne State. All served on the Advisory Committee on Rules of Evidence. This panel urged the courts to use the Proposed Rules now. Many courts across the country are using these Rules. And as Professor Cary said, you will find in reading the Proposed Rules that you have been here before.

The Proposed Rules were used twice in this case; on the installation of handrails, and on the question of the mortality tables.

Nine, defendant takes exception to the charge permitting the jury to find wrongful withholding of wages and maintenance and cure. This has already been discussed.

Ten, objection is noted to the part of the instructions relating to the phrase "knew or should have known" as regards unseaworthy conditions. Again, that proposition has been covered.

Eleven, defendant contends that the instructions on the elements of damages were so phrased as to make the jury assume liability. Before this court instructs a jury on damages, it prefaces that instruction with the clear instruction that they are not to consider damages at all until they first determine the question of liability. If they determine the question of liability then they may proceed to the consideration of damages. This prefaces every instruction given on damages. It is well known to every attorney. Instructions are given on the as-

sumption that they will only be considered if the jury has decided in favor of the plaintiff on the liability issue.

Twelve, exception is taken to that part of the instructions dealing with consideration of the fluctuating state of the economy.

■■■ The Michigan Supreme Court has traditionally accepted a five per cent present worth rule in determining damages. Rivers v. Bay City Traction and Electric Co., 164 Mich. 696, 128 N.W. 254 case, and other cases. However, the highest tribunal of Michigan has also stated that inflation and the resulting diminution of dollars may be considered. Knights of Equity Memorial Scholarship Commission v. University of Detroit, 359 Mich. 235, 238, 102 N.W.2d 463, 465 (1960); Normand v. Thomas Theatre Corp., 349 Mich. 50, 61–62, 84 N.W.2d 451, 456–457 (1957); Miller v. Miller, 320 Mich. 43, 46, 30 N.W.2d 509, 510 (1948). Thus, it has long been recognized that the jury may consider the fluctuating aspects of the economy. To retain the five per cent present worth formula as a mandatory instruction, a doctrine which was enunciated around the turn of the century, a doctrine which presupposes a stable economy, without at the same time considering the fluctuations which are all together too apparent to this generation of Americans, is totally unrealistic.

The Supreme Court in its wisdom recognized the necessity for permitting consideration of the fluctuation of the economy. Five per cent reduction to present worth can be equally as speculative as other fluctuations of the economy. The history since the turn of the century has clearly demonstrated the necessity for doing precisely what the Michigan Supreme Court permits.[2]

That concludes all of the objections that were specifically raised after the jury instructions. There are, however, several more objections which defendant's attorney, Mr. Strawhecker, made in this case.

It is sufficient in my judgment for the court to rest basically upon the special verdict in this case. I have considered carefully every one of the objections and sub-objections that have been made, and I find no reason to grant the defendant's motion. It is hereby denied.

*The role of the § 1873 jury.*

At the beginning of the trial of this case, defendant demanded a jury pursuant to 28 U.S.C. § 1873:

"In any case of admiralty and maritime jurisdiction relating to any matter of contract or tort arising 'upon or concerning any vessel of twenty (20) tons or upward, enrolled and licensed for the coasting trade, and employed in the business of commerce and navigation between places in different states upon the lakes and navigable waters connecting said lakes, the trial of all issues of fact shall be by jury if either party demands it."

Responding to defendant's jury demand, plaintiff asserted that, because of the equitable nature of admiralty and the discretion historically vested in the admiralty judge, any resulting jury verdict would be advisory only.

Thus is presented the novel issue of the scope of the jury function under the above statute. In resolving this issue, it is necessary to understand the somewhat complex history of the legislation dealing with the jury in this specific area of admiralty law.

Early federal court decisions held that, under the Constitution and the Judiciary

---

2. Subsequent to the rendering of this opinion from the bench, the Sixth Circuit Court of Appeals in Sleeman v. C & O R.R. 414 F.2d 305, decided July 25, 1969, held only Federal law is applicable as to the measure of damages. Sleeman was remanded for computation of damages alone. The Sixth Circuit held that, as a matter of federal law in Federal Employer Liability Act cases, a present worth reduction must be applied. Since the present case is also a Federal Employer Liability Act case, federal law must therefore control on the question of any present worth reduction and inflationary offset.

Act of 1789, admiralty jurisdiction was confined to tidal waters. The Thomas Jefferson, 23 U.S. 428, 10 Wheat. 428, 6 L.Ed. 358 (1825), The Steamboat Orleans, 36 U.S. 175, 11 Pet. 175, 9 L.Ed. 677 (1837). These decisions assumed that cases arising on navigable lakes and rivers were cognizable in common law courts alone and consequently triable by jury under the Seventh Amendment to the Constitution.

In 1845 Congress, assuming the correctness of the above decisions, sought to extend admiralty jurisdiction. The resulting 1845 statute expanded district court admiralty jurisdiction to the Great Lakes and their navigable interconnecting waters. 5 Stat. 726, 727. It was assumed when this legislation was passed that Congress could not constitutionally transfer jurisdiction from common law to admiralty courts without protecting the right to jury trial which would have accompanied the common law action. Thus the statute transferred jurisdiction away from common law courts, but "saving, however, to the parties the right of trial by jury of all facts put in issue in such suits, where either party shall require it." 5 Stat. 727.

Congress, in adding the above savings clause, attempted merely to preserve an existing right which it assumed already existed and could not constitutionally be abrogated. It did not intend to create a new right. The Genesee Chief, 53 U.S. (12 How.) 443, 451, 13 L.Ed. 1058 (1851); Gillet v. Pierce, 10 Fed.Cas. 388, 388–389 (No. 5,437, E.D.Mich. 1875); The City of Toledo, 73 F. 220, 222 (N.D.Ohio 1896).

The assumptions supporting the 1845 statute proved to be erroneous. In 1851 the Supreme Court, through Chief Justice Taney, held that "the lakes and the waters connecting them are public waters; and we think are within the grant of admiralty and maritime jurisdiction in the Constitution of the United States." The Genesee Chief, 53 U.S. (12 How.) 443, 457, 13 L.Ed. 1058 (1851).

Admiralty jurisdiction thus depended on whether water was navigable, not whether it was tidal. Shortly thereafter, the 1845 statute was held to be totally inoperative as a grant of admiralty jurisdiction. The Eagle, 75 U.S. (8 Wall.) 15, 25, 19 L.Ed. 365 (1869).

These decisions, however, did not render the jury trial clause of the 1845 act ineffective. The Supreme Court interpreted it not as a savings clause but as a positive grant consistent with Congressional power. The Genesee Chief, supra, at page 459, 13 L.Ed. 1058. The decision in The Eagle, supra, specifically excepted the clause in question from the holding that the 1845 act was inoperative. Thus, what had been intended as a saving of a supposed pre-existing constitutional right was interpreted to effect a congressional extension of this right.

As a result of The Eagle, the jury clause of the 1845 act was incorporated, as an express grant of jury right, in Section 566 of the Revised Statutes of 1873:

"Section 566. The trial of issues of fact in the district courts, in all causes except cases in equity and cases of admiralty and maritime jurisdiction, and except as otherwise provided in proceedings in bankruptcy, shall be by jury. In causes of admiralty and maritime jurisdiction relating to any matter of contract or tort arising upon or concerning any vessel of twenty tons burden or upward, enrolled and licensed for the coasting trade, and at the time employed in the business of commerce and navigation between places in different states and territories upon the lakes and navigable waters connecting the lakes, the trial of issues of facts shall be by jury when either party requires it."

This enactment has survived substantially unchanged, and is now embodied in 28 U.S.C. § 1873. Defendant's jury demand was pursuant to this section.

It is important to remember that § 1873 and its predecessors provide for an admiralty jury only in limited circumstances. Its jury grant is also completely independent, both historically and proce-

durally, of that contained in the Jones Act.

With the foregoing brief historical outline in mind, the court will proceed to consider the precise issue raised by the parties in this case. As noted earlier, the question of whether a Great Lakes jury is to play merely an advisory role is a novel one. It is also one on which there is hardly abundant authority. However, the available cases do not support plaintiff's claim that the jury's function is advisory only.

The first reported decision construing the role of a jury under Section 566 of the Revised Statutes was The Empire, 19 F. 558 (E.D.Mich.1884). Judge, latter Mr. Justice, Brown, held that the verdict was advisory only. He relied primarily on language in Boyd v. Clark, 13 F. 908 (Cir.Ct.E.D.Mich.1882). In this latter case, jury trial was had under Section 566. Holding there that, although tried to a jury, the case was still essentially in admiralty, Mr. Justice Matthews added that the "provisions regarding trials by jury in the seventh amendment apply only to common-law juries, and that upon appeal the case stands for trial here precisely as if tried by the court." Id. at page 910.

This language led the court in The Empire, supra, at 559, to conclude that, because the jury's verdict was not binding on the Court of Appeals, "it seems to be a logical inference that it ought to be regarded in this court only as advisory." However, as was pointed out in The Western States, infra, there is nothing in Boyd to justify this conclusion and, in fact, the Boyd court had declined to express any opinion on the effect of the jury's verdict:

> "Whether the jury allowed in this class of admiralty cases is anything more than advisory to the district court, as are juries in chancery cases, I do not deem it necessary to express an opinion." Id. at 910.

The only other holding that Section 566 verdicts are advisory is in The City of Toledo, 73 F. 220 (N.D.Ohio, 1896).

The district court so held because it was thought a contrary construction would curtail the power of the admiralty judge. Id. at 225. However, this conclusion is not in harmony with the Supreme Court's earlier position in The Genesee Chief, supra, which considered such a jury provision to be a valid congressional regulation of admiralty procedure. See 53 U.S. (12 How.) at 459, 13 L.Ed. 1058.

The most persuasive discussion of the role of a Section 566 jury is the opinion of Circuit Judge Ward in The Western States, 159 F. 354, 357 (2d Cir. 1908), cert. den. sub nom. 210 U.S. 433, 28 S.Ct. 762, 52 L.Ed. 1136 (1908). After review of both The Empire and The City of Toledo, the court held that the verdict was binding and not merely advisory. Judge Ward reasoned that:

> When, however, the statute gives to a party the right to a jury trial, it is difficult to believe that it was intended to authorize the court to take this right away and substitute its own findings for the jury's, as in the case of feigned issues sent out of chancery. Such a practice does not give the party a jury trial at all, or, at best, it gives with one hand what it takes away with the other. It seems to us that, consistently with a party's right to a jury trial, the power of the court can go no further than to grant a new trial. 159 F. at 358.

This position was reaffirmed in Munson S. S. Line v. Miramar S. S. Co., 167 F. 960, 964 (2d Cir. 1908). The Seventh Circuit is also in accord, in dicta, in The Nyack, 199 F. 383, 389 (7th Cir. 1912).

The only other discussion of the role of an admiralty jury is the following broad dicta in City of Cleveland v. McIver, 109 F.2d 69, 71 (6th Cir. 1940): "While the verdict of the jury is regarded in admiralty as merely advisory, its approval by the court constitutes the finding of the court." However, the court cited no supporting authority and made no reference to Section 566 or 28 U.S.C. § 1873, although it appears from the facts that the jury must have been demanded pursuant to this Section.

Thus, although there is some authority for the proposition that a Great Lakes jury is merely advisory, the definitive opinion in The Western States, supra, appears to be the law on the subject. The Supreme Court has made reference to that decision twice in alluding to the fact that a jury trial is permitted under 28 U.S.C. § 1873. Crowell v. Benson, 285 U.S. 22, 52, n. 16, 52 S.Ct. 285, 76 L.Ed. 598 (1931); Michalic v. Cleveland Tankers, 364 U.S. 325, n. 4, 81 S.Ct. 6, 5 L.Ed. 2d 20 (1960). This conclusion is also supported by the recent decision in Close v. Calmae Steamship Corp., 44 F.R.D. 398, 402–405 (E.D.Pa.1968), which holds that a jury trial can be obtained in certain admiralty proceedings, 28 U.S.C. § 1873, being one example.

The Federal Rules of Civil Procedure do not interfere with such a congressionally granted right to a jury trial in certain admiralty cases. Rule 38(a) provides:

"(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."

Although subsection (e) restricts Rule 38 as regards admiralty and maritime claims,[3] the Explanatory Notes to then proposed Rule 38(e) indicate that the drafters were cognizant of a very limited right to a jury trial.[4] Furthermore, the Notes of the Advisory Committee on Rules regarding Rule 9(h) state:

"It is no part of the purpose of unification to inject a right to jury trial into those admiralty cases in which that right is not provided by statute." 28 U.S.C. Rule 9(h), (1969 Cum. Supp.).

A leading admiralty treatise, in discussing the Act of 1845 concludes: "Such a verdict of the jury is binding on the trial court in admiralty—not indeed by constitutional provision but otherwise as it would be at law." 2 Benedict, Admiralty § 225 (1940).

■ The right to a trial by jury, where permitted, is sancrosanct and any doubt should be resolved in favor of permitting a jury trial. Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935).

■ In summary, it has been shown that a grant of a jury trial in admiralty is consistent with both constitutional requirements and congressional power. Three times Congress has seen fit to provide for jury trial in Great Lakes admiralty cases,[5] as well as permitting various claims by seamen to be tried by jury on the law side of the court under the Jones Act. It has also been shown that, with respect to a Great Lakes jury, the cases compel the conclusion that its role is not a mere advisory one.

Therefore, this court holds that the verdict of a jury impaneled pursuant to 28 U.S.C. § 1873 is mandatory.

---

3. "These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h)."

4. "There is no constitutional right to a jury trial in admiralty, and statutes conferring it are rare.
 "The purpose of the new subdivision is to preserve the status quo as to a jury trial."

Comm. on Rules of Practice and Procedure, Memo to the Advisory Comm. on Admiralty Rules, the Status of Unification of the Civil and Admiralty Rules 33 (Nov. 15, 1962).

5. 1845, 5 Stat. 726; 1873, Rev.Stat. § 566; 1948, 28 U.S.C. § 770 (1940 ed.).