without more on the basis of the "clean hands" doctrine.

To the extent that the final judgment of the trial court dismissed the complaint as amended, with costs adjudged against the plaintiff, the said judgment is affirmed. To the extent that the judgment proceeded to a legal determination as to the validity of the contracts between the parties, we conclude that, in the view we take of the equitable principles applicable, these judgments should not have been reached. The judgment of the trial court is, therefore, modified by striking therefrom paragraphs B and C of section 5 of the said judgment.

As thus modified the judgment is affirmed.

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GULF ATLANTIC WAREHOUSE CO., Respondent.**

**No. 18701.**

United States Court of Appeals Fifth Circuit.

June 12, 1961.

Jules H. Gordon, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Stuart Rothman, Gen. Counsel, Frederick U. Reel, Atty., N. L. R. B., Washington, D. C., for petitioner.

Andrew P. Carter, New Orleans, La., for respondent.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and DE VANE, District Judge.

TUTTLE, Chief Judge.

This petition to enforce a Labor Board order deals with the right of the Union to require the employer to furnish it with a seniority list of employees. The National Labor Relations Board determined that the refusal to furnish the list was a violation of Section 8(a) (5) and (1) of the Act, 129 N.L.R.B. No. 9.

The existing contract, negotiated during 32 bargaining sessions, contained the following provisions touching on reassignments, layoffs and rehirings:

"Section 6. Reassignments, Layoffs and Rehirings.

"Paragraph 2. In promotions, demotions, layoffs, and rehirings, the

following factors will be taken into consideration:

"(a) Ability

"(b) Versatility

"(c) Seniority (defined as length of service) Factors (a) and (b) being equal, factor (c) shall prevail. If the Union disagrees with the Employer's decision under this paragraph, it shall have the right to handle the matter as a grievance pursuant to Paragraph 2(a) and 2(b) of Section 5 * * *."

Following the signing of the contract, the Union demanded a seniority list to enable it, as it said, to "adequately enforce and administer the current bargaining contract in force between the Company and the Union, and particularly Section 6 thereof relating to promotion, demotion and layoff and rehiring." The Company refused to submit the list, taking the position that there was nothing in the contract "requiring the Company to furnish a seniority list." Thereupon the Union filed a complaint with the National Labor Relations Board. The Board's order followed in due course.

The respondent conceded on oral argument in this Court, as we think it must in light of such decisions as N.L.R.B. v. Item Co., 5 Cir., 220 F.2d 956, that if the entire case could be compressed within the facts thus far stated the refusal of the employer to furnish the list would be a violation of the Act. However, says the Company, the history of the bargaining which produced the current contract requires quite the opposite result.

This history in brief is: The Company and the Union had been working under bargaining agreements since 1939; the agreements worked out over the years had been the result of hard and purposeful bargaining conducted by knowledgeable representatives for both Union and Management. The last contract before the one now before the Court embodied the identical "seniority" clause that the parties finally agreed upon here; however, at the beginning of negotiations on this contract the Union demanded a much

more effective and all-embracing seniority clause; it was as follows:

"Section 5—Seniority

"Paragraph 1. Seniority is defined as the length of continuous service with the Company, and shall operate on a plantwide basis. All present employees and new employees who come within the scope of this Agreement shall acquire seniority rating from the date of employment with the Employer after having completed at least thirty (30) days of service in the aggregate during the term of this Agreement.

"B. In all cases of promotion, lay-offs, or reduction of forces and re-employment seniority shall govern. When there is a decrease in working forces those employees with the greatest amount of seniority shall be the last to be laid off. When there is an increase in work after the lay-off former employees shall be re-employed in accordance with their seniority rating.

"C. Seniority lists of all employees shall be posted and made current every ninety (90) days. Sufficient copies shall be given to Union Representatives.

"D. Seniority shall be lost for the following reasons:

"(a) If the Employee voluntarily resigns.

"(b) If the Employee is discharged for just cause.

"(c) If the employee fails to report for work within five (5) work days and does not give good and sufficient reason for not reporting. The Company shall notify the Union monthly of all Employees discharged, reassigned, and hired."

The respondent says that the Union continued to insist on the inclusion of the seniority list provision until the twentieth bargaining session, after which time the Union negotiators abandoned their insistence on this clause in

return for an offer by the Company to raise its proposed wage increase as a *quid pro quo*. Respondent says that the Union representatives continued thereafter to insist on other provisions of their initial seniority clause until bargaining session number 32, at which time the Union surrendered all of its intentions as to its seniority clause in return for a new and final offer of wage increase. Respondent takes the position that the agreement by the Union to surrender its seniority clause, including the specific provision requiring the furnishing of a seniority list, and its acceptance of the Company's proposal amounted to a waiver of the right to the seniority list.

We should probably note that the minutes of the twentieth meeting introduced in evidence by the respondent, do not support its contention that the seniority list provision of the Company's original seniority clause was dealt with or treated differently from the rest of the Union's demands connected with its original proposal. It is clear that it was insisting up until the last session on some kind of seniority clause that would give it the right to have arbitration if it considered that seniority rules were not being followed by the Company. It seems fairly clear from the record that it surrendered this insistence upon the increased wage offer at the final bargaining session.

■ Nevertheless we do not think, even on the assumptions made by the respondent, that the Board was bound to find that in modifying its seniority demands in a very vital and material respect the Union knowingly waived its admitted right to obtain a seniority list by accepting the Company's seniority clause under which it would be equally entitled to have the list furnished.

The respondent charges bad faith to the Union by reason of the fact that it was testified that one of the Federal Mediators suggested to it that it surrender the seniority list requirement because it would be entitled to this in any event under the existing Company clause. This, of course, could be no more than an expression of an opinion by the Mediator as to a legal right flowing from the Company's seniority clause. The Company was just as competent to know that there was a "sleeper" of the kind the Union observed in this clause as were the Union representatives.

■ We consider that if we were to adopt the contention of the Company this would be tantamount to a holding that the rephrasing or rewording of respective suggested contract provisions during the course of negotiation gives a gloss on the terms finally agreed upon different from their ordinary legal significance. We think that ordinarily the language of the contract as finally agreed upon must be construed by the courts in accordance with ordinary rules of construction without reference to the give and take of the bargaining sessions which produced the final terminology. Otherwise we would abandon completely the parol evidence rule when dealing with this type of contract.

In United Steelworkers of America, etc. v. Warrior and Gulf Navigation Co., 5 Cir., 269 F.2d 633, we noted that the parties to a labor contract had unsuccessfully sought to include in the contract the right to submit to arbitration any decision of the employer to contract out such work as it saw fit. We based our opinion in that case that the right to contract the work out was not an arbitrable issue at least partially upon the following reasoning:

"It is not only consistent with basic principles governing construction of a contract for the court, as it did, to hold that the final product should not be construed to give the Union the provision it had unsuccessfully sought to have incorporated, but it would be unconscionable for the court to hold to the contrary." 269 F.2d 633, 637.

The Supreme Court reversed our decision, United Steelworkers of America, etc. v. Warrior & Gulf Navigation, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

That this precise matter was called to the Court's attention is indicated by the fact that it was discussed in a dissenting opinion by Mr. Justice Whittaker. Although the Court was there dealing with the right to arbitrate, a right highly favored by the law, we think that we have a lesson to learn from this litigation— that lesson is that we generally take the terms of the contract as finally written and do not give them a special meaning because of anything done by way of give and take during the bargaining sessions.

We conclude that whatever rights the Union would have under Section 6 of the present contract standing alone, it still has in spite of the history of the bargaining sessions. These rights include the right to have a reasonably accurate and reasonably correct seniority list available to it.

The order will be enforced.