**LOCAL 783, ALLIED INDUSTRIAL WORKERS OF AMERICA, AFL-CIO, Plaintiff-Appellant,**

v.

**GENERAL ELECTRIC COMPANY, Defendant-Appellee.**

No. 72-1260.

United States Court of Appeals, Sixth Circuit.

Jan. 5, 1973.

---

Charles S. Wible, Lovett, Kusch & Wible, Owensboro, Ky., for plaintiff-appellant.

Morton Holbrook, Owensboro, Ky., for defendant-appellee; Ralph W. Wible, Sandidge, Holbrook, Craig & Hager, Owensboro, Ky., on brief.

Before CELEBREZZE, McCREE and MILLER, Circuit Judges.

CELEBREZZE, Circuit Judge.

This case involves an appeal from two determinations of the District Court: the first from a preliminary order granting the Appellant Union permission to file an amended complaint and striking from the amendment the demand for a jury trial; the second from the final judgment of the District Court dismissing the Union's complaint.

The Local 783 of the Allied Industrial Workers of America (the Union) and General Electric Company (the Company) are parties to a collective bargaining agreement dated March 3, 1970 and to remain in force through August 19, 1973. The agreement covered the Company's facilities at its Owensboro, Kentucky location.[1] The dispute in question involves the Company's alleged violation of a farming-out clause contained in the present agreement and in all of the previous agreements between the Union and the Company since 1945. That clause, Article XVI, Section 5 of the present agreement, provides the following:

"There shall be no farming or letting out or transfer of machinery or work for the purpose of curtailing or reducing employment in the plant."

On March 5, 1970 the Company began a transfer of equipment from its Owensboro facilities to its new plant in Singapore. Subsequent shipments of equipment to the Singapore plant were made periodically throughout 1970 and 1971. Presently, the Company is producing at its Singapore plant tube mounts previously made at the Owensboro facilities.

The original complaint filed by the Union sought to enjoin the Company from transferring machinery, equipment or work from its Owensboro, Kentucky facilities to Singapore or any other location in violation of the collective bargaining agreement between the Union and the Company. While it was alleged that other sections of the Agreement had been breached by the Company, the central question centered around the interpretation of the farming-out clause. It is the Union's position that this operation is a transfer of machinery or work prohibited by the above clause, while the Company contends that the clause does not apply to transfers of equipment to another General Electric plant.

The District Court determined that the wording of the clause was ambiguous and that parol evidence could be introduced to explain its meaning. The District Court found that the prohibition did not apply to a transfer of machinery or work to another General Electric plant. It is argued by the Union that the clause is clear and unambiguous and that it was error for the District Court to consider evidence of the bargaining history of the two parties re-

---

1. The preamble to the Agreement provides: "This Agreement is made and entered into between the General Electric Company for its Owensboro operations, Tube Department, with offices located at 316 East Ninth Street, Owensboro, Kentucky, hereinafter referred to as the 'Company' and Local 783 of the International Union Allied Industrial Workers of America, affiliated with the AFL–CIO, hereinafter referred to as the 'Union.'"

lating to the clause and of prior practices involving other transfers of work by the Company.

We first turn our attention to the question of whether the Court erred in not granting the Union a jury trial on its amended complaint. The motion for permission to file an amended complaint was filed some nine months after the original complaint was filed and eight days before the date set for trial. The amended complaint added a claim for money damages for wages lost by employees who had allegedly been laid off because of the transfer of operations to Singapore. The District Court struck the paragraph in the amended complaint which demanded a jury trial and permitted the Union to brief the question of whether a jury trial should be granted. After the Court determined that it would not grant a jury trial, the Union petitioned this Court to issue a writ of mandamus to compel the District Court to vacate its order denying a jury trial. We declined to issue the writ. The Company contends that this issue is not now open to reconsideration.

We have previously held that mandamus will not be used to review an interlocutory order except in extreme and exceptional cases. Black v. Boyd, 248 F.2d 156 (6th Cir. 1957), modified, 6th Cir., 249 F.2d 441. In the *Black* case, we determined that an order of the District Judge denying petitioner's right of trial by jury presented an exceptional situation in which it would be appropriate to review the ruling on a petition for mandamus. We found that the refusal to grant the demand for a jury trial, when it had been timely made as a matter of right, could be vacated by the issuance of a writ of mandamus. What is presented here, however, is a different issue. It is contended that the Union's demand for a jury trial was denied, not because it was within the Court's discretion to deny the demand under Rule 39(b) of the Rules of Civil Procedure,[2] but because the trial judge can properly condition his granting of a motion to file an amended complaint under Rule 15(a).[3] In the *Black* case we noted that writs of mandamus have been issued in several cases in order to protect the right of trial by jury but we indicated that such might not be the case where the matter was one within the discretion of the Court. 248 F.2d 156, 161. In re Previn, 204 F.2d 417 (1st Cir. 1953), involved such a situation and the Court there determined that the matter was one to be settled when and if the case came on appeal from a final judgment. The question presented was whether the trial judge had abused his discretion in not granting a jury trial despite the fact that a timely demand had not been made.

We do not deal here with a judge's exercise of discretion in granting a jury trial even though a timely demand was not made. In such cases the party seeking a jury trial bears a heavy burden in attempting to show an abuse of discretion by the judge. Noonan v. Cunard Steamship Co., 375 F.2d 69 (2d Cir. 1967). McNabb v. Kansas City Life Insurance Co., 139 F.2d 591 (8th

2. Rule 39(b) provides that " . . . notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues."

3. Rule 15(a) *Amendments*. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed

upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Cir. 1943). Our question is whether a judge can, within his discretion, permit a party to amend his complaint only on the condition that a timely demand for a jury trial be stricken from the amended complaint. We think that, given the proper circumstances, such action by the judge would be reasonable. *See* Parissi v. Foley, 203 F.2d 454 (2d Cir. 1953), rev'd on other grounds, 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867 (1955). The question, then, is whether the circumstances in this case warranted such a condition. We think they did not. Under Rule 15(a) of the Rules of Civil Procedure, the Union could only amend its complaint by leave of court or by written consent of the adverse party. Here it sought to amend by leave of Court. The granting or refusing leave to amend under the particular circumstances of the case rests in the sound discretion of the trial judge, Strickler v. Pfister Associated Growers, Inc., 319 F.2d 788 (6th Cir. 1963). Rule 15(a), however, provides that "leave shall be freely given when justice so requires." In the absence of any justifying reason, "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In *Foman,* some factors which would justify a denial of a motion to amend were identified as undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies by previous amendments, and futility of amendment. We find none of these or any other circumstances in this case which would have justified a refusal to permit the Union to amend its complaint.

This determination, however, is not dispositive of this issue. The question remains, if the circumstances do not justify refusal of permission to amend, do they warrant the condition to the amendment that no jury trial would be granted? The right to a jury trial is guaranteed by the Seventh Amendment and "occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935).[4] It becomes discretionary with the trial judge to grant a jury trial only when the right has been waived by failure to make a demand. But even when exercising its discretion under Rule 39(b) of the Federal Rules of Civil Procedure, "the court should grant a jury trial in the absence of strong and compelling reasons to the contrary." Swofford v. B & W, Inc., 336 F.2d 406, 409 (5th Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). Here, however, there was no waiver of the right. The original complaint requested only injunctive relief and was not triable by jury as a matter of right. The amended complaint requested additional relief in the form of money damages and was triable by jury as a matter of right. The jury demand made in the amended complaint was therefore, timely. *See* Bereslavsky v. Kloeb, 162 F.2d 862 (6th Cir. 1947), cert. denied, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393 (1947), Bereslavsky v. Caffey, 161 F.2d 499 (2d Cir. 1947), cert.

---

4. Rule 38 of the Federal Rules of Civil Procedure restates this right and governs the procedure in demanding a jury:

(a) *Right Preserved.* The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

(b) *Demand.* Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

\*   \*   \*   \*   \*

(d) *Waiver.* The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

denied, 332 U.S. 770, 68 S.Ct. 82, 92 L. Ed. 355 (1947).

■ As we have noted before, "[i]n the exercise of sound discretion, the granting of leave to amend can be conditioned in order to avoid prejudice to the opposing party." Strickler v. Pfister Associated Growers, Inc., 319 F. 2d 788, 791 (6th Cir. 1963). A requirement that the amendment be filed by a specified date or that the party amending bear a portion of the additional cost to the opposing party would, in proper circumstances, be reasonable conditions. Firchau v. Diamond National Corp., 345 F.2d 269 (9th Cir. 1965). The circumstances may even warrant, as was the case in Parissi v. Foley, 203 F.2d 454 (2d Cir. 1953), rev'd on other grounds, 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867, the condition that the case continue to be tried to the court, even though the amendment raises issues triable to a jury. But it is our opinion that the circumstances must indeed be exceptional before a party is required to forego his constitutional right to a trial by jury. "The federal policy favoring jury trials is of historic and continuing strength." Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed. 691 (1963), and any doubt should be resolved in favor of permitting a jury trial. Nice v. Chesapeake and Ohio Ry., 305 F.Supp. 1167, 1185 (W.D.Mich.1969). See AMF Tuboscope, Inc. v. Cunningham, 352 F.2d 150 (10th Cir. 1965). Here the amendment was filed eight days before the scheduled start of the trial. That it was not imperative that the trial begin on the scheduled date is indicated by the fact that the trial judge set the date for trial back two months in order to have the parties brief the issue of whether a jury trial should be granted. Thus, we have a set of circumstances entirely different from those present in *Parissi, supra,* where the case had already been through sixteen days of trial, the amendment was the second filed by the defendant, and it was the defendant who had insisted that the trial begin on a specified date. There is no indication of any improper motive on the part of the Union in filing its amendment, or that its sole purpose in filing the amendment was to obtain a jury trial. The Court noted merely that nine months had elapsed since the filing of the original complaint and that the case had been set for trial. For these reasons, the Court stated that it was exercising its discretion in declining to allow the Union a trial by jury on the issues of its amended complaint. While the Court did not specifically state that it was exercising its discretion under Rule 15(a),[5] we have treated its order as such because it is clear that the Court would otherwise not have been faced with an exercise of discretion. Bereslavsky v. Kloeb, 162 F.2d 862 (6th Cir. 1947), cert. denied, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393 (1947). Accordingly, we find that the circumstances present in this case were not of the exceptional nature required to permit the attachment to the amended complaint the condition that the new issues would not be tried to a jury.[6]

■ We now look to the question of whether the Court erred in admitting evidence of negotiation discussions and past practices in interpreting the contract. The first determination to be made in this regard is whether the clause of the contract is clear and unambiguous in its meaning. We think that it is. The clause states that "[t]here shall be no . . . transfer of machinery or work for the purpose of cur-

---

5. The order of the district Court read: "The Court declines, in the exercise of its discretion, to allow the plaintiff a trial by jury on the issues of its Amended Complaint, said amendment not being tendered until nine (9) months had elapsed, during all of which time plaintiff could have amended its Complaint, and after the case was set for trial. SO ORDERED."

6. Of course, when an action involves both equitable and legal issues, as here, "only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510–511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959).

tailing or reducing employment in the plant." We can attach but one meaning to this sentence. The Company may not transfer any work or machinery which has as its purpose the reduction of employment in the plant. The preamble to the contract states that the agreement is between General Electric's Tube Department at its Owensboro operations and the local Union. We are not persuaded that "the plant" refers to anything but the Owensboro operation of General Electric.

We have previously held that the determination of whether a clause in a contract is ambiguous is a question for the court to decide. Tennessee Consolidated Coal Co. v. United Mine Workers of America, 416 F.2d 1192 (6th Cir. 1969), cert. denied, 397 U.S. 964, 90 S. Ct. 999, 25 L.Ed.2d 256 (1970). Only when the court has determined that the contract is ambiguous is a construction of the clause necessary. After a finding of ambiguity has been made, "[e]vidence of the surrounding circumstances and the practical construction of the parties is admissible to aid in its interpretation." Tennessee Consolidated Coal Co. v. United Mine Workers of America, 416 F.2d 1192, 1198 (6th Cir. 1969), cert. denied, 397 U.S. 964, 90 S.Ct. 999, 25 L. Ed. 256 (1970). It is true that there is generally broad latitude in the admissibility of bargaining history to construe a collective bargaining agreement. But where the meaning of the clause in question is clear, no construction is necessary. In Pekar v. Local Union No. 181, 311 F.2d 628 (6th Cir. 1962) we stated that a contract "must be construed to give effect to the intent of the parties when it was made and the circumstances existing at the time it was made should be looked to to ascertain the intent." *Pekar, supra,* 311 F.2d 628, 636. In that case, however, there was a finding that the disputed clause was ambiguous and was in need of construction. Here we make no such finding. *See* N.L.R.B. v. Gulf Atlantic Warehouse Co., 291 F. 2d 475 (5th Cir. 1961); International Union of Electrical, Radio and Machine

Workers, AFL–CIO v. General Electric Co., 332 F.2d 485, 490 (n. 5) (2d Cir. 1964), cert. denied, 379 U.S. 928, 85 S. Ct. 324, 13 L.Ed.2d 341 (1964); Anson v. Hiram Walker & Sons, Inc., 222 F.2d 100 (7th Cir. 1955), cert. denied, 350 U. S. 840, 76 S.Ct. 79, 100 L.Ed. 749 (1955), rehearing denied, 248 F.2d 380 (7th Cir. 1957).

While the Supreme Court said in United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), that "special heed should be given to the context in which collective bargaining agreements are negotiated," 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, the Court based its decision on the fact that the agreement specifically required arbitration. Similarly, in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Court, in determining the meaning of an arbitration clause in the collective bargaining agreement, held that evidence of bargaining history was not to be used to decide whether a particular dispute was arbitrable. Rather, the Court relied on the language used in the arbitration clause. The Court did say that the "labor arbitrator's source of law is not confined to the express provisions of the contract as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it," 363 U.S. 574, 582, 80 S.Ct. 1347, 1352. We do not think the Court was formulating a rule that provides for the use of evidence apart from the contract language itself, even though the meaning of the contract is clear. Rather, we think that the Court was stating that such evidence is to be used *when the contract is in need of interpretation.* Other courts have reached the same conclusion. In N.L.R.B. v. Gulf Atlantic Warehouse Co., 291 F.2d 475 (5th Cir. 1961), the Court discussed the decision in the *Steelworkers* case:

"Although the Court was there dealing with the right to arbitrate, a right

highly favored by the law, we think that we have a lesson to learn from this litigation—that lesson is that we generally take the terms of the contract as finally written and do not give them a special meaning because of anything done by way of give and take during the bargaining sessions." 291 F.2d 475, 478.

*See also* International Union of Electrical, Radio and Machine Workers, AFL–CIO v. General Electric Co., 332 F.2d 485 (2d Cir. 1964), cert. denied, 379 U. S. 928, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964).

Since we find that the farming-out clause is clear on its face and not ambiguous, we therefore hold that evidence of bargaining history is not admissible to explain its meaning.

The fact that the Union may have waived violations of the farming-out clause in the past would not prevent it from asserting its claim against the present possible violation. Whether or not the Union knowingly waived its claim against the alleged violation by renegotiating the agreement with knowledge of the activities of the Company is a factual question to be resolved by the jury, *see* Local 127, United Shoe Workers of America, AFL–CIO v. Brooks Shoe Manufacturing Co., 298 F.2d 277 (3d Cir. 1962), as is the question of whether the action taken by the Company in reducing employment at its Owensboro plant breached the collective bargaining agreement.

The judgment of the District Court is therefore reversed and the case is remanded to the District Court for a trial by jury in conformity with the opinion of this Court.

McCREE, Circuit Judge (concurring).

I agree that the clause prohibiting the transfer of work is not ambiguous insofar as it proscribes transfer to another General Electric plant. Accordingly, it was error to admit evidence of negotiation discussions and past practices to interpret this provision. However, I do not understand the majority opinion to hold that the meaning of the phrase "for the purpose of curtailing or reducing employment" is unambiguous. The meaning of this phrase, as well as the determination whether there was a causal relationship between the intracompany transfer and reduction of the work force at the Owensboro plant, are issues to be determined upon retrial.