Carl F. FREDERICKSON, Sr., Plaintiff,

v.

LUEDTKE CONSTRUCTION COMPANY and Durocher & VanAntwerp, Inc., Defendants.

No. G74–98 C.A.

United States District Court, W. D. Michigan, S. D.

March 1, 1977.

McCroskey, Libner, Van Leuven, Kortering, Cochrane & Brock, Muskegon, Mich., for plaintiff; Robert J. Van Leuven, Muskegon, Mich., of counsel.

Cholette, Perkins & Buchanan, Grand Rapids, Mich., for Luedtke; William D. Buchanan, Grand Rapids, Mich., of counsel.

Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for Durocher; Jon G. March, Grand Rapids, Mich., of counsel.

OPINION

FOX, Chief Judge.

Plaintiff brought this suit in admiralty for damages stemming from an illness allegedly incurred while he served as captain of the tug "Ray Durocher." The vessel was owned by defendant Durocher & VanAntwerp, Inc. and chartered by Luedtke Con-

struction Co. The question before me at this time is whether defendants are entitled to a jury trial, which they have demanded, or whether plaintiff's motion to strike the jury demand must be granted.

The relevant statute, 28 U.S.C. § 1873, provides:

"In any case of admiralty and maritime jurisdiction relating to any matter of contract or tort arising upon or concerning any vessel of twenty tons or upward, enrolled and licensed for the coasting trade, and employed in the business of commerce and navigation between places in different states upon the lakes and navigable waters connecting said lakes, the trial of all issues of fact shall be by jury if either party demands it."

While other issues have been raised, this dispute primarily centers upon the language, "any vessel of twenty tons or upward." The "Ray Durocher's" gross tonnage is 20.80, while its net tonnage is 14.14. Defendants argue that the statute refers to gross tonnage, while plaintiff contends that it refers to burden tonnage, or net or registered tonnage.[1] Whether the trial is to be to the court or to a jury depends upon whether the statutory language is to be construed as referring to gross or net tonnage, and this question is apparently one of first impression.

After carefully reviewing the relevant cases, statutes and regulations, I have concluded that the language of 28 U.S.C. § 1873 refers to net or burden tonnage, and

not to gross weight. Since the "Ray Durocher" weighs less than twenty tons burden, and since I find no other basis for extending the statutorily conferred right to a jury trial under these circumstances, the plaintiff's motion to strike the jury demand must be granted. The reasons supporting this decision follow.

The language of 28 U.S.C. § 1873 was changed in one arguably significant respect when the U.S. Code was revised in 1948. The previous statutory provision, 28 U.S.C. § 770, employed essentially the same wording, except that it referred to "any vessel of twenty tons *burden* or upward."[2] Defendants argue that this deletion of the word burden is significant, since Congress must have intended thereby to make gross tonnage the standard, and that the plain language of the statute admits of no other construction.

"When a section or clause of a statute is ambiguous, much aid . . . may be derived in ascertaining its meaning by comparing the section or clause in question with prior statutes *in pari materia,* but it cannot be admitted that such a resort is a proper one where the language employed by the Legislature is plain and free of all uncertainty, as the true rule in such a case is, to hold that the statute speaks its own construction." *Barnes v. Philadelphia & R.R. Co.,* 17 Wall. (U.S.) 294, 21 L.Ed. 544 (1873). Further, prior acts may not normally be resorted to in order to create an ambiguity, *Hamilton v. Rathbone,* 175 U.S.

---

1. Provisions for calculating tonnage are found in 46 U.S.C. § 77. They first describe how to ascertain gross tonnage, and then, in subdivisions (a) through (i), describe deductions to be made—primarily the space occupied by the crew's quarters and the vessel's propelling machinery. The statute continues after subsection (i): "And the proper deduction from the gross tonnage having been made, the remainder shall be deemed the net or register tonnage of such vessels."

Various cases cited by plaintiff in his brief show that the term "burden" tonnage is equivalent to net or register tonnage. See *State Tonnage Tax Cases,* 79 U.S. (12 Wall.) 204, 20 L.Ed. 370 (1871); *Kiessig v. San Diego County,* 51 Cal.App.2d 47, 124 P.2d 163 (1942).

2. The predecessor provision to 28 U.S.C. § 1873, i. e., 28 U.S.C. § 770, read in its entirety:

"The trial of issues of fact in the district courts, in all cases except cases in equity and cases of admiralty and maritime jurisdiction, and except as otherwise provided in proceedings in bankruptcy, shall be by jury. In causes of admiralty and maritime jurisdiction relating to any matter of contract or tort arising upon or concerning any vessel of twenty tons burden of upward, enrolled and licensed for the coasting trade, and at the time employed in the business of commerce and navigation between places in different States and Territories upon the lakes and navigable waters connecting the lakes, the trial of issues of fact shall be by jury when either party requires it."

414, 20 S.Ct. 155, 44 L.Ed. 219 (1899). I find in this case, however, that the statutory reference to the weight of vessels is inherently ambiguous in light of the variety of possible units of measurement, and the common usage of particular standards such as burden or register tonnages, in admiralty. Without some qualifying term in the statute itself, in light of the common methods of weighing vessels, a simple cutoff based on the number of tons is legitimately open to question.

■ Given the ambiguity in the statute it is appropriate to refer to earlier versions of the statute for aid in construction. The Supreme Court, in another admiralty case, noted that when a statute is found to be ambiguous, "we are authorized to refer to the original statutes, from which the section was taken, and to ascertain from their language and context to what class of cases the provision was intended to apply. * * * " *Conqueror*, 166 U.S. 110, 122, 17 S.Ct. 510, 515, 41 L.Ed. 937 (1897). This would be true even if the earlier statute had been repealed. *Re Hohorst*, 150 U.S. 653, 660, 14 S.Ct. 221, 37 L.Ed. 1211 (1893). See also, *Ex parte Crow Dog*, 109 U.S. 556, 561, 3 S.Ct. 396, 27 L.Ed. 1030.

■ As noted above, the earlier versions of 28 U.S.C. § 1873 spoke of twenty tons *burden*. There is no indication of any legislative intent to change substantively the scope of this jury trial provision, and the reviser's notes state simply that "changes were made in phraseology." 28 U.S.C.A. § 1873. In light of the ambiguity of "twenty tons or upward" and the absence of any legislative intent manifested to change the long-standing usage of burden tonnage, it would seem logical to use this rather than gross tonnage. On the other hand, there is some force to defendants' argument that the deletion of the word burden should normally be considered to have some significance, and that it is consonant with a legislative intent to liberalize the availability of jury trial in admiralty cases.

Both parties have referred the court for guidance in resolving this matter to various statutory provisions which employ weight-based criteria as a means of classifying vessels. Plaintiff argued early in the exchange of legal briefs and memos on this question that the "twenty tons or upward" phrase of 28 U.S.C. § 1873 refers to the register tonnage of the vessel as determined by 46 U.S.C. § 77. Defendants responded that § 1873 contains no reference to this statute, but instead simply states that it applies to any vessel of twenty tons or upward which is enrolled and licensed for the coastal trade. Therefore rather than looking to the registry statute, they argue, the court should look to the statutes relating to enrollment and licensing to determine whether the "Ray Durocher" is or is not a vessel of over twenty tons for purposes of § 1873. I agree that statutes and regulations regarding enrollment and licensing provide the most logical, appropriate and useful frame of reference for resolving this question. Looking to these, however, I find no support for the defendants' position, and to the contrary, find that the applicable unit of measurement is burden, or net register tonnage.

Several statutory provisions are relevant to our inquiry, including the following. Section 251 of Title 46 provides in pertinent part as follows:

"Vessels of twenty tons and upward, enrolled in pursuance of [certain enumerated sections] of this title, and having a license in force, or vessels of less than twenty tons, which, although not enrolled, have a license in force, as required by such sections, and no others, shall be deemed vessels of the United States entitled to the privileges of vessels employed in the coasting trade or fisheries."

Title 46, Section 252 provides in pertinent part:

"In order for the enrollment of any vessel, she shall possess the same qualifications, and the same requirements in all respects shall be complied with, as are required before registering a vessel. . . . "

Title 46, Section 258 states:

"Any vessel of the United States, navigating the waters on the northern, north-

eastern, and northwestern frontiers, otherwise than by sea, shall be enrolled and licensed in such form as other vessels; such enrollment and license shall authorize any such vessel to be employed either in the coasting or foreign trade on such frontiers, and no certificate of registry shall be required for vessels so employed. Such vessel shall be, in every other respect, liable to the regulations and penalties relating to registered and licensed vessels."

Section 259 sets forth requirements for the form of enrollment and section 263 does likewise for the form of licenses. Section 260 authorizes the Commissioner of Customs to issue a consolidated form of enrollment and licensing for U.S. vessels in lieu of the form of enrollment prescribed by § 259 and the form of license prescribed by § 263.

Finally, § 263, in setting forth the form of license for vessels licensed for carrying on the coasting trade or fisheries, provides that the vessel's burden must be set forth in tons as appears by her enrollment, but that "if she be less than twenty tons, insert, instead thereof, 'proof being had of her admeasurement.'"

What is clear from a review of all these provisions regarding enrollment and licensing is that the meaning of "twenty tons or upward" is still somewhat ambiguous. Section 251 employs the phrase "twenty tons and upward," and by itself sheds no further light. Section 263 on the other hand lends some support for the view that burden tonnage is the appropriate measure, since it prescribes that the license reflect the vessel's weight in "burden tons." When the requirement that burden tonnage be stated is qualified by the phrase "but if she be less than twenty tons . . . ," it is only natural to assume that the twenty tons referred to in this clause is also burden tonnage. Further evidence that this is the unit of measurement intended is found in the provisos of § 263, the first of which speaks of "vessels of five *net* tons and over." In any event, the ambiguity of the statutes is resolved by reference to the reg-

ulations of the Coast Guard concerning documentation of vessels. These regulations governing enrollment and licensing of vessels speak in terms of "net tons" exclusively. 46 C.F.R. § 67.01–1.

Section 67.01–1(a) states that "a vessel of 20 net tons or more may be registered or enrolled and licensed," and that "a vessel of 5 net tons or more but less than 20 net tons may be licensed (except vessels subject to the provisions of paragraph (b) of this section) or registered." Paragraph (b), referred to in greater detail below, also speaks of vessels of "5 tons net or more." Great deference is of course due to the interpretation given a statute by the officers or agency charged with its administration. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). I find that the regulations of the Coast Guard, Department of Transportation, referred to above are dispositive of this issue, and conclusively prove that the measure of weight utilized by the enrollment and licensing statutes (which defendants concede, and in fact insist, should control the interpretation of 28 U.S.C. § 1873) is net tonnage, and not gross tonnage.

While I consider any ambiguity in the construction of 28 U.S.C. § 1873 completely resolved by the illuminating language of 46 C.F.R. § 67.01–1, and the absence of any evidence that Congress intended by "changes in phraseology" to depart from the longstanding usage of burden tonnage, I would nonetheless like to clarify some of the misconceptions presented in defendants' brief in support of their position.

First, defendants argue that according to the enrollment and licensing statutes, vessels of twenty tons or upward must be enrolled and licensed to carry on the coastal trade in the United States, while vessels of five tons and upward, but less than twenty tons, may be licensed but cannot be enrolled. Since the "Ray Durocher" is both enrolled and licensed, defendants argue, it must be considered to be twenty tons or more. While the issuance of any particular document could obviously not change the empirical fact of the "Ray Durocher's"

weight, it is true that the apparent conflict between the statute and the vessel's documentation is superficially confusing. The confusion is dissipated, however by reference to the regulation governing enrollment and licensing, 46 C.F.R. 67.01–1. Paragraph (a) is the general provision and contains the distinction relied upon by defendants between vessels of twenty tons or more and vessels of five tons or more but less than twenty tons. The former, it states, may be registered or enrolled and licensed. The latter may be licensed or registered, but not, by implication, enrolled. Paragraph (b) reveals the error of the defendants' assumptions. It states:

> "Any vessel of 5 net tons or more which is to be documented for navigating the waters of the northern, northeastern, or northwestern frontiers otherwise than by sea shall be granted a frontier enrollment and license, Form CG–1273 (except certain pleasure vessels)."

While the "frontier" terminology, derived from statutes passed in the mid-nineteenth century, may seem archaic now, it is a fact that this area is a "frontier" region, and the document appended to plaintiff's memorandum shows that what the "Ray Durocher" was issued was indeed Customs Form 1273, a permanent Frontier Consolidated Enrollment and License for the Coasting and Foreign Trade. While 46 U.S.C. § 258 may be vague in its command that vessels navigating waters of the frontiers "shall be enrolled and licensed in such form as other vessels," the administrative regulations make the documentation scheme pellucid. Paragraph (b) of 46 C.F.R. 67.01–1 shows us at a glance that there is no inconsistency between the fact that the "Ray Durocher" is less than twenty tons and the fact that it is both enrolled and licensed, and defendants' position is erroneous.

The fact that the "Ray Durocher" was issued a Consolidated Certificate of Enrollment and License as a vessel operating on the frontiers is also probably the answer to the rather tenuous argument advanced by defendants regarding the weight recorded on the vessel's documentation. Defendants' argument is essentially as follows: 46 U.S.C. § 260 provides for consolidated forms of enrollment and license incorporating the form of enrollment required by § 259 and the form of license required by § 263. The "Ray Durocher" operates under a consolidated form of enrollment and license. Only vessels of twenty tons or over are entitled to be enrolled, and the form of enrollment requires that actual measurements, including weight in tons, must be set forth. The form of license required by § 263, however, does not require that the vessel's burden tonnage as appears in her enrollment be set forth, if it is between five and twenty tons, but instead that the license contain the words "proof being had of her admeasurement." The actual measurements of the "Ray Durocher" are set forth in its documentation. Defendants argue that since only vessels of twenty tons or more have to have their actual measurements set forth on the consolidated enrollment and license form, while vessels of less than twenty tons need only have recorded the words "proof being had of her admeasurement," the "Ray Durocher" must therefore be over twenty tons.

The major flaw in this argument is obviously that the "Ray Durocher" can be, and is, enrolled, as discussed above. Beyond this, I believe the whole argument is chimerical and based on an implausible construction of the statute. As I observed above, the clause, "but if she be less than twenty tons . . ." is used to qualify the requirement that the license reflect a vessel's *burden tons* as appears by her enrollment. When the statute requires a description of the vessel's actual weight to be recorded in burden tons, unless she be less than a certain number of tons, there is no logical basis for assuming that the exception employs a different unit of measurement from the rule, and in fact such a result would be illogical and poor draftsmanship. Neither party disagrees, nor could they, that the burden tonnage of the "Ray Durocher" is less than twenty tons. Therefore, if the statutory reference to vessels of less than twenty tons must be read as referring to burden tonnage, as I believe it must, de-

fendants' argument has no substance. Defendants can no more increase the vessel's weight through semantics, than they can reason from faulty premises concerning enrollment to the conclusion that § 263 speaks of gross rather than burden tonnage.

The remaining argument of defendants is also specious and easily answered by reference to the applicable statutory provisions and regulations. The argument in its entirety, as contained in the reply brief of December 7, 1976, is as follows:

"(T)here is one other very important difference between coasting vessels which depends on their weight. Vessels which are less than twenty tons burden *must be the sole and entire property of citizens of the United States,* and this fact must be certified by oath. (Title 46 U.S.C.A., § 262). Vessels over twenty tons, if owned by a corporation which is organized and chartered under the laws of the United States, can be subject to United States enrollment even though some of its directors be noncitizens. (See Title 46 U.S.C.A., § 253 and § 254; Title 46 U.S.C.A., § 262). . . .

"As applied to the facts of this case, we find that the vessel involved was enrolled and that the oath certified by the Secretary of the corporation, in order to obtain its license, was that she was a vessel owned by a corporation and that 75% of her ownership was by citizens of the United States. . . ."

The thrust of this argument is then that the "Ray Durocher" is less than wholly owned by United States citizens, that any vessel under twenty tons must be solely and entirely the property of United States citizens, while those over twenty tons need not be, and that the "Ray Durocher" is therefore over twenty tons.

The first problem with this contention is again apparent from its face. Defendants correctly quote the statute as saying that vessels less than twenty tons *burden* must be wholly the property of citizens of the United States. As I have noted above, there is and can be no dispute as to the empirical reality of the "Ray Durocher's"

weight. Defendants know that the net weight of the vessel is 14 tons, and no sophism will make it any heavier regardless of who owns how much of it.

In any event, there is no inconsistency in this case between the weight of the vessel and the regulations concerning ownership. The vessel is owned by Durocher, VanAntwerp, Inc., which is incorporated under the laws of the State of Michigan and is accordingly a citizen of Michigan and of the United States. Defendants' argument, set forth above, inaccurately represents the information set forth on the Certificate of Enrollment and License when it states that "75% of (the vessel's) ownership was by citizens of the United States." What the document actually states is that "75 percent of the interest in the corporation owning this vessel is owned by citizens of the United States. It may engage in the coastwise trade so long as so owned and no longer." In fact, there is no indication from the record before me that the corporation owning the "Ray Durocher" is not wholly owned by American citizens, and it could be that the language concerning 75 percent ownership is simply a legally significant phrase used to show compliance with the applicable statutes and regulations.

Title 46, § 802, which defendants did not cite, speaks to the issue of a corporation, partnership or association as citizen, and states in pertinent part:

"(a) Within the meaning of this action no corporation, partnership, or association shall be deemed a citizen of the United States unless the controlling interest therein is owned by citizens of the United States, and, in the case of a corporation, unless its president and managing directors are citizens of the United States and the corporation itself is organized under the laws of the United States or of a State, Territory, District, or possession thereof, but *in the case of a corporation,* association, or partnership operating any vessel in the coastwise trade *the amount of interest required to be owned by citizens of the United States shall be 75 per centum.*" (Emphasis supplied.)

Also relevant to the issue of citizenship are two regulations 46 C.F.R. § 67.03–5(a) and (b), and 46 C.F.R. 67–01–7(a)(2). The former reads as follows:

"(a) The term 'citizen,' in the case of a corporation, means one which is incorporated under the laws of the United States, or of any State thereof, of which the president or other chief executive officer, and the chairman of the board of directors are citizens of the United States, so long as no more of its directors than a minority of the number necessary to constitute a quorum shall be noncitizens.

"(b) A vessel, although owned and documented by a corporation which is a citizen as defined in paragraph (a) of this section, shall not engage in the coastwise trade unless 75 percent of the interest in the corporation is owned by citizens as specified in section 2 of the Shipping Act, 1916, as amended.[2]

(The footnote, deleted here, simply sets out the text of 46 U.S.C. § 802). The second regulation, 46 C.F.R. § 67.01–7, states:

"(a) The appropriate one of the following notations shall be made on the register of any vessel owned by a corporation which is established as a citizen of the United States under the definition contained in § 67.03–5(a) or (b), except when such register is required by any other provision of this part to bear an endorsement prohibiting the vessel from engaging in the coastal trade:

(1) 'Less than 75 percent of the interest in the corporation owning this vessel is owned by citizens of the United States. It shall not engage in the coastwise trade;' or

(2) '75 percent of the interest in the corporation owning this vessel is owned by citizens of the United States. It may engage in the coastwise trade so long as so owned and no longer.' "

This latter notation is of course the precise language contained on the Consolidated Certificate of Enrollment and License of the "Ray Durocher." It appears that the use of the 75 percent language is merely in compliance with the regulations and not necessarily an indication of the exact composition of the corporation which owns the vessel. In any event, it is clear that at least 75 percent of the owners of the corporation which owns the "Ray Durocher" are United States citizens, so that under the statutory provisions and regulations set out above, Durocher, VanAntwerp, Inc. is a corporation which is entitled to own this vessel and engage in the coastwise trade with it. Defendants' arguments based on the owners' citizenship vis a vis the weight of the vessel obviously are without merit.

In short, each of defendant's attempts to show that various enrollment and licensing provisions use gross tonnage, rather than burden tonnage, and that gross tonnage is likewise applicable as the unit of measurement for purposes of 28 U.S.C. § 1873, collapse in the face of the pertinent administrative regulations and statutory provisions. But the initial proposition that enrollment and licensing provisions provide useful guidance is sound, and as demonstrated above, these clearly confirm the view that the "twenty tons" referred to in § 1873 is net tonnage, not gross tonnage.

Defendants have also argued that whether or not theirs is the correct interpretation of the net/gross weight issue, they must still be allowed a jury trial because § 1873 creates an arbitrary classification of those cases in which a demand for jury is proper and those in which it is not, and if interpreted as not entitling them to a jury trial, would constitute a denial of their constitutional right to equal protection of the laws.

I find substantial merit to defendants' argument, but nonetheless must hold under the circumstances presented here that they are not entitled to a jury trial. Plaintiff does not really address the issue raised by this equal protection claim, other than to argue that "all standards which depend upon weight, size, length, etc., are arbitrary to a certain extent." Plaintiff asserts that defendants' contention that "there is no rational basis whatsoever for distinguishing vessels based upon their weight cannot be supported by law or policy considerations."

They do not show what the rational basis for the legislative classification was, however, other than to suggest that Congress had determined that the size of the vessel and her employment were such that a jury trial would be permissible.

While it is not difficult to perceive the rational basis for classifying vessels according to weight for purposes such as enrollment and licensing, or safety regulations, it is not as easy to see how the weight of a vessel is related to the purposes of according a jury trial in contract and tort cases. As defendants point out, two seamen may have identical injuries on separate vessels weighing 39,900 pounds and 40,000 pounds, respectively, and under the Act, a jury may be demanded in the latter but not the former. The case at bar is another example, since the injury alleged and damages claimed by plaintiff would be no different whether this vessel were 10 tons or 100 tons. The Seventh Amendment[3] employs an arbitrary threshold limit of $20. While that sum may be less useful now than it was when the Bill of Rights was passed for weeding out de minimus claims, it is still related to the seriousness of the action, so that a jury trial is available for almost all significant common law suits. Similarly, two of the primary jurisdictional statutes governing access to the federal courts, 28 U.S.C. § 1331 and § 1332, require a showing that the "matter in controversy exceeds the sum or value of $10,000." While this figure is also arbitrary in a broad sense, it again allows or does not allow a jury trial based on what the litigants have at stake—a reasonable measure of the seriousness of the case. These are in apparent contrast to the weight-based classification of § 1873, which does not at first glance seem to have any nexus with the purposes of jury trials.

All legislation, of course, involves the drawing of lines, and the drawing of lines necessarily results in particular individuals who are disadvantaged by the line drawn being virtually indistinguishable for many purposes from those individuals who benefit from the legislative classification. *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 660, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (Rehnquist, J., dissenting); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

"The equal protection clause does not prohibit legislative classification and the imposition of statutory restraints on one class which are not imposed on another. . . . The ultimate test of validity is not whether (the classes differ), but whether the differences between them are pertinent to the subject with respect to which the classification is made. . . . If those differences have any rational relationship to the legislative command, the discrimination is not forbidden. . . .

"It is a salutary principle of judicial decision, long emphasized and followed by this Court, that the burden of establishing the unconstitutionality of a statute rests on him who assails it, and that courts may not declare a legislative discrimination invalid unless, viewed in light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators. A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it. *Rast v. Van Deman & Lewis Co.,* 240 U.S. 342, 357 [36 S.Ct. 370, 60 L.Ed. 679]; *Tax Commissioners v. Jackson,* 283 U.S. 527, 537 [51 S.Ct. 540, 75 L.Ed. 1248]." *Metropolitan Casualty Ins. Co. v. Brownell,* 294 U.S. 580, 55 S.Ct. 538, 539, 79 L.Ed. 1070 (1935).

There is no legislative history to guide the court in this case in a search for any rational basis underlying the twenty ton vessel weight limit employed by Congress in 28 U.S.C. § 1873. However, it is conceiva-

---

**3.** "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, according to the rules of common law."

ble that the legislators believed larger vessels would more likely be involved in substantial contract claims, at least, and possibly more serious tort claims. Or, they may simply have wanted to minimize the administrative burden and expense to the judicial system by limiting the jury trial caseload. We have no evidence, of course, of the number of vessels above or below the twenty ton cutoff, or of any reliance by Congress on such statistical information. These possible explanations are speculative, and while they might satisfy the test of "any state of facts which may reasonably be conceived to justify the provision," I decline to decide this question today, since I do not believe that adoption of defendants' arguments would change the result here.

■ The reason for this is that even if I were to hold that there is no rational basis for making a distinction for purposes of jury trials based upon the weight of the vessel involved, there would be no basis for then extending the right of jury trial to the defendants in this case. There was, historically, no right to a jury trial in admiralty cases. Any present right to jury trial exists by virtue of legislative grant, *Genesee Chief,* 53 U.S. (12 How.) 443, 459, 13 L.Ed. 1058 (1851); cf. *Eagle,* 75 U.S. (8 Wall.) 15, 19 L.Ed. 365 (1869), and it would be improper for this court to extend it. Statutes enacted in derogation of common law are to be strictly construed. *Brown v. Barry,* 3 Dall. (U.S.) 365, 367, 1 L.Ed. 638 (1797).

Defendants have referred to *Empire,* 19 F. 558 (E.D.Mich.1884), and *Gillet v. Pierce,* 10 Fed.Cas.No.5,437, 388 (E.D.Mich.1875) as authority for their argument that the statute is arbitrary and capricious. These cases trace the history of the jury trial provision at some length, and I am quite familiar with them and with the history of § 1873, having discussed them in some detail in my opinion in *Nice v. Chesapeake and Ohio Railway Company,* 305 F.Supp. 1167, 1182–1185 (W.D.Mich.1969). I see no need to restate the convoluted history of the

present jury trial provision here, but as I observed in *Nice,* "(i)t is important to remember that § 1873 and its predecessors provide for an admiralty jury only in limited circumstances." Id. at 1183.

■ Defendants have argued (in their initial brief) that "given the policy of the Seventh Amendment to the Constitution favoring Trial by Jury, this Court is far less apt to err by granting a Jury Trial where not specifically prohibited by Statute than by denying a Jury Trial," citing *Ballard v. Moore-McCormack Lines, Inc.,* 285 F.Supp. 290 (D.C.N.Y.1968), and *Byrd v. Blue Ridge Rural Elec. Coop.,* 356 U.S. 525, 537–539, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). Admiralty cases, however, did not fall within the terms of the Seventh Amendment, which speaks only of "suits at common law" and review "according to the rules of the common law." There is no constitutional right to a jury trial in admiralty,[4] and these cases as well as others not cited but containing similar language are distinguishable. *Byrd,* supra, was a personal injury case brought in federal court due to diversity of citizenship. It was one in which a jury trial would traditionally have been appropriate, and the only dispute involved whether a state law would apply reserving a certain issue for decision by the judge. *Ballard,* relying on *Byrd,* was a Jones Act case, and the question was whether plaintiff would be entitled to a jury trial without meeting the amount in controversy requirement. The court held that it had jurisdiction under 28 U.S.C. § 1337, so that no amount in controversy need be satisfied, and further stated that "all the court does is to give plaintiff his jury trial, not out of its discretion but because of his right to it. Under the Jones Act, a seaman is entitled to a jury trial, unless he waives it, which is not the case here." 285 F.Supp. at 297. Nor should the language in *Nice* which states that doubts should be resolved in favor of jury trials be interpreted to support defendants' position here, since there was no question in that

4. Comm. on Rules of Practice and Procedure, Memo to the Advisory Comm. on Admiralty Rules, the Status of Unification of the Civil and

Admiralty Rules 33 (Nov. 15, 1962). *Nice,* supra, 305 F.Supp. at 1185.

**1318**

case that there was to be a jury trial, but rather only whether the jury's verdict was to be advisory or binding. The decision of the Sixth Circuit in *Local 783, Allied Industrial Workers v. General Electric Co.,* 471 F.2d 751, 756 (6 Cir. 1973), citing this court's opinion in *Nice,* does not support defendant's position either. It involved a timely jury demand for a claim concerning money damages in a labor suit, which was triable to a jury as a matter of right. This claim had been made in an amended complaint, and the original complaint had requested only injunctive relief. The trial judge conditioned leave to amend the complaint on the plaintiff's striking his timely jury demand from the complaint, and the Sixth Circuit found this improper.

Each of these cases involved claims falling within the traditional scope of the Seventh Amendment, except *Ballard,* where the court found that the plaintiff was clearly entitled to a jury trial under the Jones Act. In light of this, the district court's reference to the Seventh Amendment in *Ballard* was superfluous, and to the extent that it ignored the difference between the common law underpinnings of the Seventh Amendment and the admiralty jurisdiction, its application to the case at bar is slightly misleading.

Since there was no right to a jury trial in admiralty cases at common law, and such right exists today only by virtue of legislative grant, even if I were to find that the distinction between vessels larger or smaller than twenty tons is arbitrary and capricious, I would have no authority for affirmatively extending the right to jury trial to vessels of less than twenty tons. Since it would not affect the outcome of the present dispute, I do not decide this issue.

In light of the disposition of the issues discussed above, there is no need to reach the question whether the "Ray Durocher" was employed in the business of commerce and navigation "between places in different states." Either way, defendants would not be entitled to a jury trial.

Plaintiff's Motion to Strike Defendants' Demand for Jury Trial is hereby granted.