Robert HARRIS, Plaintiff,

v.

The WARNER & SWASEY COMPANY, et al., Defendants.

No. C85–2786.

United States District Court, N.D. Ohio, E.D.

Oct. 24, 1989.

Van M. Lowry, Hardiman, Alexander, Buchanan & Howland Co., Cleveland, Ohio, for plaintiff.

David Roloff, Gaines & Stern, Cleveland, Ohio, for The Warner & Swasey Co.

Dianne Foley Hearey and Bruce G. Hearey, Speith, Bell, McCurdy & Newell, Cleveland, Ohio, for International Ass'n of Machinists and Aerospace Workers, Local 1253.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This matter is before the Court on defendant The Warner and Swasey Company's (Company) motion for summary judgment and on defendant Union, Local 1253 of the International Association of Machinists & Aerospace Workers' (Union) motion for summary judgment. Plaintiff opposes the motions.

Pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 141 *et seq.* and § 185 *et seq.*, plaintiff brings this action against the Company for breach of the collective bargaining agreement (Agreement) against the Union for unfair representation. Plaintiff seeks declaratory, injunctive, and monetary relief. Specifically, plaintiff contends: (1) that upon his layoff on March 31, 1985,[1] the Company's refusal to allow him to "bump" into a Receiving Leader position held by another employee constituted a breach of its Agreement with the Union; and (2) that the Union's handling of his grievance con-stituted a breach of its duty of fair representation.

## I. BACKGROUND

Plaintiff contends that the Company's refusal to allow his request to "bump" into a Receiving Leader position held by another employee violated Article VII, Section 7.1 of the Agreement. The Company maintains that, since Harris never held a Receiving Leader job classification, Section 7.1 precluded Harris from bumping into that position. Whatever rearrangement rights plaintiff had were governed by Article VII, Section 7.1 of the Agreement, which provides, in pertinent part:

Section 7.1. For the purpose of indefinite layoffs when reducing the working force, rearranging the working force, and in recalling employees from layoff, preference will be given to the senior employee who has held the classification at top rate or one step from the top and has, in management's opinion, demonstrated the skill, experience, and ability to perform the work efficiently and without training.

An employee who is not placed on a job as the result of positions of the preceding paragraph will be considered on the basis of seniority for the job in labor grades 1, 2, or 3, held by the least senior employee.

In his complaint, plaintiff also alleges that the Company breached Section 7.10 of the Agreement by creating the job of Receiving Leader, asserting that it was a new job which should have been awarded by posting. Section 7.10 provides, in part:

Section 7.10. When a new job is created or a job vacancy occurs, the Company will post the job on all Company Shop Bulletin Boards for a period of two (2) working days plus the day of posting. . . .

On March 28, 1985, plaintiff filed a grievance setting forth the above allegations which the Union pursued through step 3 of the grievance procedure. The Company, in

---

1. On March 31, 1985 when the Union pursued a grievance to arbitration on behalf of a fellow employee. Pursuant the Agreement, the arbitrator permitted the employee to "bump into" plaintiff's Clerk position which the fellow employee had previously. As a result, plaintiff was laid off.

accordance with Section 7.1 of the Agreement, denied the grievance. The Union, after determining that plaintiff's grievance lacked merit, decided not to take it to final and binding arbitration.

## II. DISCUSSION

■ Nonjudicial resolution of labor contract disputes is generally favored. The Supreme Court, in *Republic Steel v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965), stated that "Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing procedures the 'common law' of the plant." In a § 301 case, plaintiff must demonstrate that the Union breached its duty of representation and that there has been a breach of the collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). To establish a breach of duty of fair representation, plaintiff must show that the Union acted in an arbitrary, discriminatory, or bad-faith manner. *Id.* at 190, 87 S.Ct. at 916. Furthermore, the Union's misconduct must amount to something more than a minor error in judgment. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Ruzicka v. General Motors Corp.*, 649 F.2d 1207 (6th Cir.1981), *cert. denied*, 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983); *Ruzicka v. General Motors Corp.*, 523 F.2d 306 (6th Cir.1975), *cert. denied*, 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983). Additionally, where the Union has addressed the merits of a grievance, it is provided a wide range of reasonableness in reaching its decision. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1983); *Whitten v. Anchor Motor Freight*, 521 F.2d 1335 (6th Cir.); *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976).

■ In the instant case, while employed by the Company, plaintiff held the following job classifications: Receiving Clerk, Shipping Clerk, and Boxing and Crating. Plaintiff never held the job classification of Receiving Leader. Moreover, the job classification of Receiving Leader was not a new job created by the Company: Mr. Roosevelt Lillie held the position since 1970 and Mr. Harris, in his deposition, acknowledged that the position has existed "[e]ver since I've been with the Company." Therefore, the Company did not breach section 7.10. The Union pursued plaintiff's grievance through step 3 of the grievance procedure, and elected to not pursue the grievance any further since plaintiff could not bump into the Receiving Leader job classification under Section 7.1 of the Agreement. Accordingly, the Union did not breach its duty of fair representation.

■ To avoid judicial interference with private bargains, collective bargaining agreements should be interpreted based on their plain and literal meaning. *N.L.R.B. v. South Central Bell Telephone Co.*, 688 F.2d 345 (5th Cir.1982), *cert. denied*, 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983). Courts construe clear and unambiguous provisions in collective bargaining agreements without utilizing extrinsic evidence. *Local 783, Allied Industrial Workers v. General Electric Co.*, 471 F.2d 751 (6th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973).

Section 7.1 of the Agreement is clear and unambiguous. The plaintiff never "held the classification" of Receiving Leader, therefore, upon being laid off, he was not entitled to bump into that job classification. Moreover, the Receiving Leader was not a new position requiring posting. Consequently, the Company did not breach the new position requiring posting. Consequently, the Company did not breach the Agreement.

Accordingly, summary judgment is entered in favor of the Union and the Company. This action is terminated.

IT IS SO ORDERED.